!(*Criminal Court of Cook County.*)

## People of the State of Illinois

### vs.

### William Loeffler, et al.

(July 14, 1905.)

1. PUBLIC RECORDS, WHEN SUBJECTS OF FORGERY. A public record or other authenticated matter of a public nature, to be the subject of forgery must be one that affects a pecuniary demand or obligation, or property right; and this must be manifest on the face of the document itself, or by averment in the indict-ment of extrinsic facts which show that it is of such a character.

2. FORGERY—INSTRUMENT FORGED MUST BE ADMISSIBLE IN EVIDENCE. To be the subject of forgery the instrument must be admissible in evidence, but the converse of the proposition does not follow that any instrument which is admissible in evidence for any purpose may be the subject of forgery.

3. CITIES AND VILLAGES—CAN GRANT FRANCHISE ON STREETS ONLY BY ORDINANCE. The charter of the city of Chicago (city and village act) is silent as to the mode in which the council may grant a franchise for the use of the streets, but such a franchise cannot be conferred by a mere resolution of the council but must be by ordinance on the passage of which the yeas and nays must be taken, which must receive a majority vote of all the members elect of the council, be submitted to the mayor for his approval, and be transcribed upon the records of the city.

4. FORGERY—PUBLIC RECORDS—MUST AFFECT PROPERTY RIGHTS. The alteration of the public record in question could not constitute forgery since it did not affect any property right.

5. Defendants were indicted for forgery for altering certain proceedings in the city council of Chicago, the proceedings in

question containing a report by the commissioner of public works, followed by the words: "Placed on file;" these words were alleged to have been altered to read, "Which was by motion of Ald. Novak (8th ward) duly approved and placed on file." *Held* that this did not constitute forgery, and that a verdict of not guilty must be ordered.

Indictment for forgery heard before Judge Arthur H. Chetlain. After the close of the state's case a motion was made to find for the defendants.

Statement of facts.

The defendants William Loeffler, Edward J. Novak, A. G. Wheeler, Edward Ehrhorn and James Higgins, were indicted under sec. 105 of the criminal code, for altering certain proceedings of the city council of Chicago. The proceedings in question contained a report by the commissioner of public works, followed by the words: "Placed on file," and the evidence adduced by the prosecution tended to show, and the court on this motion assumed that it did show, that the defendants or some of them had changed the record by substituting for these words the following: "Which was, on motion of Ald. Novak (8th ward) duly approved and placed on file." The motion was sustained and a verdict of not guilty was ordered and returned.

*John J. Healy,* state's attorney, *Harry Olsen* and *E. C. Lindley,* assistant state's attorneys, for the people of the state of Illinois.

*Nathaniel C. Sears, Moritz Rosenthal* and *Wm. S. Forrest,* for defendants.

CHETLAIN, J.:—

The forgery charge was the insertion after the words "which was" and before the words "placed on file" of the words "on motion of Ald. Novak (8th ward), duly approved;" so that it read "which was on motion of Ald. Novak, 8th ward, duly approved and placed on file." A public record or other authenticated matter of a public nature to be the subject of forgery must be one that affects a pecuniary demand or obligation, or property right; and this must be manifest on the face

of the document itself, or by averment in the indictment of extrinsic facts which show that it is of such a character.  According to the decided weight of authority in this country, when a document does not, on its face, purport to affect a pecuniary interest or property right, the indictment is bad, unless it sets up facts to show just how such a document does affect a pecuniary interest or property right or facts from which the court may judicially see that it has some such apparent legal effect.  It is true if the document were a bond, bill, promissory note, deed or demand for money, the law would imply the injury to a pecuniary interest or property right.

The document in question here is not one which on its face purports to affect a property demand or obligation, or property right.  Considered by itself alone, there is nothing to indicate that it has any such effect or tendency, or that it has the apparent legal capacity to prejudice the rights of the city or the public, or that it purports to create a liability or obligation, or to work injury to any one.  It is contended by the state's attorney that a false making and the intent to defraud are the only two essential elements to constitute forgery; and that it is sufficient if the instrument has the mere show or appearance of fraud, or might by any possibility be used to defraud.  Such is not the law in this state.

The specific enumeration of various instruments in the statutory definition of the crime, and the history of their insertion at various times, of which the court takes judicial cognizance, attest the contrary.

It is further contended that any instrument which is admissible in evidence for any purpose may be the subject of forgery.  In support of this proposition no authorities were cited.  To be the subject of forgery the instrument must be admissible in evidence; but the converse of the proposition does not follow.

I am of the opinion that sufficient extrinsic facts are not averred in the indictment to make it operative.  It fails to aver that others relied on the forged record and purchased securities of the Tunnel Company, and that moneys were invested

on the strength of the forged document, and that any conduits or tunnels were built after February 5, 1900. The evidence, it is true, so shows; but to this the well-known rule of pleading applies that proof without allegations is as fatal as allegations without proof. The failure to include these averments makes the indictment bad. In this connection it becomes material to inquire whether the council's approval of the McGann report, if made, was needed or effective for any purpose. The State's Attorney claims that the action of the council on the McGann report had the effect of a resolution approving the granting of the permits for tunnels, the work done thereunder, and of the company's plans on file for future tunnel construction, which estopped the city from denying the company's rights.

By the ordinance of February 20, 1899, in evidence, a grant was given to the Illinois Telephone & Telegraph Company to construct, maintain, repair and operate in all of the streets, avenues, alleys and other places in the city of Chicago a line or lines of conduits and wires to be used for the transmission of sound signals and intelligence, by means of electricity or otherwise, which should be laid and access thereto be had from the surface, and not from a tunnel beneath the surface. It appears from the evidence, which, for the purpose of this motion, the court must assume to be true, that the Telegraph Company, knowingly intending to defraud the city, in plain violation of the letter and spirit of the ordinance, prepared and filed plans with the commissioner of public works for constructing a tunnel of extensive dimensions thirty feet below the surface in all the streets, avenues, alleys and public places in the business district of the city, and obtained permits for tunnel construction.

January 29, 1900, the Hermann resolution was introduced in the council requesting a report from the commissioner of public works as to the work done under the ordinance, and for his opinion as to whether it was within the fair letter and spirit of the same. The report of the commissioner of public works, accompanied by the tunnel's plans and copies of the permits granted, were submitted to the council and action

thereon was taken by the council placing the same on file. This action appeared in the printed pamphlet of the council proceedings. The indictment charges that after July 20, 1900, the printed pamphlet, showing the action aforesaid, constituted the official record, and was forged by making it appear that the report of the commissioner of public works, on motion of Alderman Novak, was duly approved and placed on file; it appears from the evidence that the company, relying on the affirmative action of the council, as shown by said printed pamphlet, invested hundreds of thousands of dollars in tunnel construction and built miles of tunnel; and that thereby the city became estopped to deny the rights of the company to its tunnels and conduits as constructed.

I am at a loss to perceive how the action of the council, had it been taken, merely approving the report of the commissioner of public works, who was an agent of the city, reporting to his principal, can have such an effect or afford the basis for an estoppel in *pais,* or operate as a consent of the council, or as a ratification of what had been done. The forged report of the council's action did not in express terms, nor purport, to approve the permits granted, the plans submitted, nor the opinion of the commissioner that the work was within the letter and spirit of the ordinance. The council's action in approving the report at most would be but the expression of a wrong opinion, not binding on the city.

Where so important a franchise is involved it does not seem reasonable to hold that a grant may be conferred by the mere approval of such a report. It would be a dangerous doctrine to so assert, one fraught with evil consequences. It must be remembered too that the company was not a party to this transaction. I am of the opinion that whatever the effect of the forged document might be, the company that had knowingly prepared plans, secured permits, and constructed its tunnel in plain violation of the ordinance, with the evident purpose to obtain a subway monopoly and thereby defraud the city, would be estopped from asserting the doctrine of estoppel, or of consent or of ratification or of claiming that it had acquired rights by the council's construction of its ordinance.

25

Under these circumstances the city would not be estopped to deny to the wrong-doer the fruits of his wrong-doing. Right and justice would not require it.

The charter is silent as to the mode in which the council may grant a franchise of this kind. But in view of the subject matter, the large source of revenue that may be exacted by the city for the use of its streets, the various public grants for the uses that already exist in its streets, and the necessity for their proper regulation; in view of the vastness of the interest involved, the liabilities imposed, and the acts and provisions therein, and of the fact that the provision of such an ordinance have a continuing force and effect; I am of the opinion that such a grant is a legislative act of the highest order and that it cannot be conferred by a mere resolution of the council, but must be embodied in the permanent form of an ordinance, on the passage of which the yeas and nays must be taken, which must receive a majority vote of all the members elect of the council, be submitted to the mayor for his approval and transcribed upon the records of the city.

I am aware of the case in the 208th Illinois which counsel urge, with great show of reason, should be conclusive of the question here involved. (*Village of London Mills v. White,* 208 Ill. 289.)

What was said in that case must be taken in connection with the facts in the case. The grant there was for the erection of telegraph poles in a small town; and the court, in giving its reasons for its decision, said, that "There was nothing upon which a veto could operate in that instance." It is asserted that the action of the council adopting the McGann report operated as a resolution conferring upon the company the right to tunnel its conduits. If it had that effect, it clearly modified or enlarged the original grant. Whether it had that effect or not, it was a mere nullity, because the law is well settled that an ordinance can only be amended, altered, modified or enlarged by an act of equal dignity.

For the reasons given I am of the opinion that the forged document in question was null and void, wholly inoperative and could not afford the basis for an estoppel in *pais,* nor

operate as a consent, or as a ratification by the city of the act of the company.

Counsel for the defendant urged that from the allegations of the indictment and the evidence it appears that as to the defendant William Loeffler no crime is charged, because it appears that he is charged with forging his own record; and that his co-defendants stand in a relation to him, in law, which renders the indictment fatal also as to them. Owing to the necessity for immediate decision and want of time I have been unable to fully consider this question; nor is it necessary.

For the above reasons the court is constrained to direct a verdict of not guilty as to all of the defendants.

NOTE.—A motion to quash the indictments in the above cases was made in 1905 before Judge Tuthill in the criminal court of Cook county, and the motion denied, Judge Tuthill rendering a decision that the indictments were good. The case then came up for trial before Judge Chetlain. The decision of Judge Tuthill follows. *People v. Wheeler*, 1 Ill. C. C. 387.—Ed.