## The Village of London Mills et al.
### v.
### Edward White et al.

*Opinion filed February 17, 1904—Rehearing denied April 7, 1904.*

1. Municipal corporations—*when a resolution granting rights to telephone company cannot be revoked.* A license granted by resolution of a village board to the owner of a telephone line authorizing him to use the streets and alleys for poles and wires, becomes a valid contract, which cannot be revoked after the owner has accepted the privileges granted and constructed the line with the knowledge and tacit consent of the village authorities.

2. Parties—*when defendants are not improperly joined.* Joining a telephone company with a village as defendants to a bill to prevent threatened removal of the complainant's poles and wires from the streets of the village is not improper, where it is alleged that the village trustees are stockholders in the defendant company and are conspiring with the company to give the latter a monopoly of the telephone business.

3. Pleading—*when sworn bill may be amended without affidavit excusing delay.* It is not error to permit a sworn bill to be amended without an affidavit showing a valid excuse for the delay, where the truth of the matters stated in the amendment is shown by affidavits and admitted by demurrer, and where the amendment did not change the cause of action but amplified the statement of it.

4. Telephone companies—*extent to which Telephone Companies act applies to individuals.* The act relating to telegraph and telephone companies, in so far as it confers the power of eminent domain, applies only to corporations, but as to the obtaining of written consent of corporate authorities to the erection of poles and wires along the streets and highways it applies to individuals. (*Goddard v. C. & N. W. Ry. Co.* 202 Ill. 362, distinguished.)

Magruder, J., specially concurring.

*London Mills v. Telephone Circuit,* 105 Ill. App. 146, affirmed.

Appeal from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Fulton county; the Hon. George W. Thompson, Judge, presiding.

On November 30, 1901, a bill for an injunction was filed by Edward White and others, appellees, against appellants, in the circuit court of Fulton county. The court

208—19

permitted the complainants to amend their bill, and, as amended, a demurrer was interposed by appellants, which was overruled. A decree *pro confesso* was entered, and an injunction was awarded in accordance with the prayer of the bill. The cause was appealed to the Appellate Court for the Third District, where the decree of the circuit court was affirmed, and an appeal was thereupon taken to this court.

The bill alleges that the complainants are residents of this State, and, as co-partners under the name of Fairview-London Telephone Circuit, have since April 2, 1900, operated a telephone system; that the system is used by members of the company, the public generally, and other connecting telephone companies; that the system connects the village of London Mills with Fairview, and furnishes telephonic communications for a large number of farmers, members of the circuit; that it has always been open to use by the public upon payment of customary charges and is in competition with other lines; that it has expended the sum of $1500 in constructing its plant, and has thirty-one miles of wire and thirty-eight telephones; that on April 2, 1900, the circuit presented the following petition to the president and board of trustees of the village of London Mills: "The Fairview-London Telephone Circuit would respectfully ask that they be granted the privilege of using the streets and alleys of the village for the erection and maintenance of the necessary poles and wires for the proper communication of said circuit in the corporate limits of your village;" that said president and trustees, at a meeting on the same day, granted such privilege, and the following record was made and entered: "London Mills, April 2, 1900.— A petition presented by the Fairview-London Telephone Circuit, asking privilege of using the streets and alleys of the village for the erection of a telephone circuit; petition granted;" that complainants immediately accepted said privileges and spent $350 in erecting poles, wires

and other fixtures in said village; that they were erected so as not to interfere with the use of such streets and alleys; that complainants united with four other telephone companies (naming them) in establishing an exchange office, and have entered into a contract with those companies to jointly maintain the same, and are liable on that contract.

The bill further avers that the London Power and Electric Company was on March 13, 1901, incorporated for $2500, under the laws of this State, "to conduct and maintain a suitable plant and necessary conducting apparatus in said village, to furnish said village and surrounding vicinity with electricity, light and power, and a system of water-works, and a telephone exchange," and sets out the names of the subscribers to the capital stock and the number of shares subscribed for by each person. It then sets out the names of the persons at that time constituting the village board. The bill then avers that the London Power and Electric Company, by its stockholders, and the village officers, conspired and confederated together to secure to the London Power and Electric Company the exclusive control of the telephone business centering at said village; that in furtherance of such conspiracy the village board passed an ordinance, which is then set out *in hæc verba*, the substance of which, so far as the telephone system is concerned, provides that the right and permission are granted to the London Power and Electric Company to construct, erect, operate and maintain poles, etc., upon the streets, alleys and highways of the said village, for furnishing to the public communication by telephone, and a telephone exchange, and that these rights and privileges shall exist and continue to be exclusive and to be in force and irrevocable for twenty-five years, reserving the right to pass reasonable regulations pertaining thereto; that no telephone line or company entering and using the central or exchange office of said corporation shall be charged in

excess of one dollar per phone per year nor in excess of $20 per year for any one line. This ordinance proceeds to repeal all ordinances, grants or permissions in conflict therewith, with the proviso that lines and centrals already established in the village shall remain immune, and no change shall be made in them except by mutual agreement, for a period of six months from the date of the ordinance.

The bill alleges that a majority of the village board that passed said ordinance were interested, as stockholders, in the London Power and Electric Company; that said ordinance was passed for the purpose of requiring all telephone companies to use the exchange office of said corporation at terms fixed by it, thereby increasing its profits; that appellees and the four other telephone companies using the joint exchange at the time this ordinance was passed permitted members of any one of them to use the lines and telephones of all five companies without charge; that after March 25, 1901, the London Power and Electric Company established its exchange, and by threats attempted to compel all other companies in said village to connect their lines with such exchange; that about May 1, 1901, two companies were permitted to enter said village without any license or permit from the village authorities, on condition that they would connect with the exchange of said corporation, and that they have not been molested since; that the village board passed another ordinance imposing a fine for making discrimination between persons, and providing that no telephone company should charge any individual or member of any line any fee which is not charged to each member of every line connected therewith, and should give to all individuals the same service accorded to others; that under this ordinance said board and the stockholders of said corporation threatened the companies having the joint exchange, and the operator in charge of such exchange, with prosecution under such

ordinance unless free telephone service was accorded to the public and free transfer fees to other telephone companies were allowed, all of which was done to compel the five telephone companies to enter the exchange of said corporation.

The bill further alleges that another ordinance was passed by said board specifically naming the Fairview-London Telephone Circuit and two other companies, and providing that the rights and privileges granted to these and all other individuals and companies except the London Power and Electric Company were thereby revoked and repealed, but providing that the plants might be used and maintained until September 25, 1901, but that no change or extension should be made in such systems without the consent of said board, the London Power and Electric Company and all other parties and companies interested; that a bill for an injunction was filed by the London Power and Electric Company against the companies operating the joint exchange to restrain them from violating said ordinances; that one of these five companies withdrew from the joint exchange and entered the exchange of said corporation, and said suit was thereupon dismissed as to such company and is still pending as to the other companies; that on November 7, 1901, a notice was served on the Fairview-London Telephone Circuit by the village authorities, notifying and requiring said circuit to remove from the streets and alleys of said village all poles, wires and other fixtures used, owned, controlled and operated by it upon and across any such streets and alleys within thirty days, and that in case of failure to comply with such demand the said village would take the necessary steps to remove such poles, wires, etc., according to law; that the London Power and Electric Company is counseling and advising with the village authorities to carry out said threats for the purpose of compelling all companies to enter their exchange or leave the village; that no such notice has

been served on any company entering the exchange of said corporation.

The bill alleges that the foregoing ordinances are against public policy and void; that complainants believe said village is about to carry out the threat to remove the telephone appliances of complainants, which will result in irreparable loss.

The village of London Mills, the president and board of trustees of the village and the London Power and Electric Company are made defendants. The bill asks that the ordinances be declared null and void, and that defendants be enjoined from carrying out their threats and from interfering with the telephone business of the complainants.

CHIPERFIELD & CHIPERFIELD, and THOMAS & ROBISON, for appellants.

A. M. BARNETT, LUCIEN GRAY, and M. P. RICE, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

In this case the record of the president and board of trustees of the village of London Mills recites the presentation of the petition of the appellees, "asking the privilege of using the streets and alleys of the village for the erection of a telephone circuit," and shows that the permission was granted by resolution or motion. Acting thereon, appellees expended a considerable sum of money in establishing their lines along the streets and alleys of the village of London Mills. It is a necessary conclusion from the averments of the bill that these lines were so established with the knowledge of the village authorities, without objection from them and with their tacit approval.

Thereafter the village board passed an ordinance by which it was ordained that "all the rights, grants, privi-

leges, franchises and permits in and to the streets, alleys. and public places" which had been granted to appellees were thereby revoked, repealed and annulled. As a result of all which, appellees contend that the license granted to them has become a contract between appellees and the village which is irrevocable, while the position of appellants is that the right to use the streets and alleys for the purposes of appellees could be lawfully granted only by ordinance.

Sections 9, 10 and 17 of paragraph 62, chapter 24, of Hurd's Revised Statutes of 1901, gives to the president and board of trustees power to regulate the use of the streets in reference to matters of this character. Section 4 of chapter 134 of Hurd's Revised Statutes of 1901 in terms applies only to telegraph companies, but the act of which it is a part, we think, should be construed as applying also to telephone companies, and this section is as follows:

"No such company shall have the right to erect any poles, posts, piers, abutments, wires or other fixtures of their lines along or upon any road, highway, or public ground, outside the corporate limits of a city, town or village, without the consent of the county board of the county in which such road, highway, or public ground is situated, nor upon any street, alley, or other highway or public ground, within any incorporated city, town or village, without the consent of the corporate authorities of such city, town or village. The consent herein required must be in writing, and shall be recorded in the recorder's office of the county. And such county board, or the city council, or board of trustees of such city, town or village, as the case may be, shall have power to direct any alteration in the location or erection of any such poles, posts, piers or abutments, and also in the height of the wires, having first given the company or its agent opportunity to be heard in regard to such alteration."

In *City of Quincy* v. *Chicago, Burlington and Quincy Railroad Co.* 92 Ill. 21, the city charter provided that "the city council shall have power to make all ordinances which shall be necessary and proper for carrying into execution the powers specified in this act." The city there, by resolution, granted to the railroad company the use of certain streets and alleys in which to lay its tracks, and in accordance with that resolution executed a deed to the company. It was contended by the city that the grant was void because the city was only authorized to legislate in reference to its streets and alleys by ordinance. In reference thereto this court said: "The action of the city council, though in the form of a resolution, we regard, with the conveyance made by the city, as a sufficient grant of possession by the city to the defendant for the purpose of constructing, maintaining and operating its railroad tracks." While it is true that this court treated the deed as aiding the resolution, still the deed could only have been authorized by the resolution, so that in the end the legality of the grant depended upon the resolution itself, and upon acts done and permitted by the city which were in pursuance of the resolution.

It is argued in the case at bar that this court should not hold that such a grant can be evidenced by resolution and made binding by acts done and permitted thereunder, because then the veto power cannot be exercised. The same objection existed to the action of the city council in the *Quincy case.* There was nothing upon which a veto could operate in that instance. There the corporate authorities had recognized the validity of the permission obtained by the railroad company by the execution of a deed and by permitting the railroad company to use the streets for many years. Here the president and board of trustees recognized the existence of the written consent held by the appellees by permitting them to erect their poles and string their wires in the streets in accordance with the terms of that written consent, and

thereafter treated that consent so granted as having validity by the passage of an ordinance repealing or revoking it, and while but little credit, perhaps, is given to this resolution by an ordinance which mentions it but to repeal it, still it is evident that the village board regarded it as having force, or the course which that body would have pursued would have been to order the removal of the poles and wires, without attempting, by ordinance, to revoke the permission which had theretofore been granted to appellees.

It has been said that acts of the city which have for their object the carrying into effect of the charter powers granted to the city are legislative in their character, and it is well settled that acts of municipal corporations which are legislative in their character must be put in the form of an ordinance, and not of a mere resolution. *Chicago and Northern Pacific Railroad Co.* v. *City of Chicago,* 174 Ill. 439; *Village of Altamont* v. *Baltimore and Ohio Southwestern Railway Co.* 184 id. 47.

There is, however, another line of cases which we regard as controlling here, which hold that where, with the consent and without the objection of the city or village authorities, a structure is erected or an improvement made in a street under a permit granted by the authorities of the municipality, and where the structure or improvement is one for the erection or construction of which the city or village might lawfully grant permission, the doctrine of equitable estoppel applies and may be enforced against the municipal corporation, and it will not be permitted to show that the permission under which the work in question has been carried forward to completion was not granted with proper formalities in the first instance. *City of Chicago* v. *Carpenter,* 201 Ill. 402; *People* v. *Blocki,* 203 id. 363; *Village of Winnetka* v. *Chicago and Milwaukee Electric Railway Co.* 204 id. 297.

Appellants contend that the act of which section 4, *supra,* is a part applies only to corporations. In so far

as that act confers the power of eminent domain this is true, but in so far as it prescribes the method for obtaining the consent of corporate authorities to the erection of poles and the stringing of wires it must be held applicable both to corporations and natural persons. Following the reasoning of this court in *Chicago Dock Co.* v. *Garrity,* 115 Ill. 155, "the clause should be read as including both corporations and individuals."

We therefore hold that where a village board has, by resolution, granted to the owner of a telephone line the use of its streets and alleys in which to set poles and to string wires for telephone uses, and where the licensee, with the knowledge and tacit consent of the village authorities, has accepted and acted upon such resolution by erecting poles and stringing wires in the streets and alleys, the license so granted thereby becomes a contract which is valid and binding upon the parties thereto, and which cannot be revoked by the village.

Equity and good conscience require that the village of London Mills be not now heard to say that this written consent must in the first instance have been given by ordinance. It is now equitably estopped so to do.

There is said to be a misjoinder of defendants, for the reason that the relief which is sought is an injunction to prevent the removal of appellees' poles and wires, and that such removal is threatened only by the village authorities, wherefore the London Power and Electric Company is improperly joined, as the relief sought is not against it; and it is also urged that the bill is multifarious, in that the substance of the charge against the London Power and Electric Company is, that it is seeking to avail itself of certain ordinances passed by the village of London Mills and is conspiring with the village authorities to destroy the business of appellees, with the purpose of driving appellees out of the telephone business in the village of London Mills, and it is argued that if these averments state a cause of action

it is one entirely separate and distinct from that stated against the village. The village, by its ordinance of August 22, 1901, attempts to divide its corporate powers and to confer a part thereof upon the London Power and Electric Company, and also attempts to exempt the rights and privileges theretofore granted to that company from the operation of that ordinance, as appears from an inspection of sections 2 and 3 of that ordinance, which are in words and figures following:

"Sec. 2. All telephones, telephone poles, telephone lines, telephone centrals, and the fixtures belonging to the same, that were established, located and used in said village on the 25th day of March, 1901, and the companies, persons or corporations owning, using and controlling the same on the date last aforesaid, shall be permitted to remain in the same places and as they were located on the said 25th day of March, 1901, and the persons, companies or corporations owning or controlling the same on said date shall have the right to continue to so use and maintain the same until the 25th day of September, 1901: *Provided, however*, that no change in location, no alterations in use and no extensions or additions to any of said telephones, telephone poles, telephone lines, telephone centrals, and the fixtures belonging to the same, shall be made during the time aforesaid, except by the mutual consent by the said village board, said London Power and Electric Company and all other parties and companies interested.

"Sec. 3. This ordinance shall be known as special ordinance No. 54, and shall be in effect from and after its passage and approval, and nothing herein contained shall be construed as affecting any of the rights and privileges heretofore granted to the London Power and Electric Company."

The bill charges that the London Power and Electric Company and the village are conspiring together to drive appellees out of the telephone business in the said vil-

lage for the purpose of securing to that company exclusive control of the telephone business in said village, and that in furtherance of said conspiracy the village authorities are threatening to remove the wires and poles of appellees. In view of these charges, and of the fact that it plainly appears from the averments of the bill that the board of trustees and the London Power and Electric Company joined in a combination, corrupt in its character, for the purpose of securing a monopoly of the telephone business in London Mills for that company, these objections based upon the grounds of misjoinder and multifariousness are not well taken.

The action of the court in permitting an amendment to the sworn bill in the absence of an affidavit showing a valid excuse for the failure to incorporate in the original bill the matters introduced by the amendment is assigned as error. The truth of the matters stated by the amendments were shown by an affidavit in support thereof, and are admitted by the demurrer. The amendments were entirely proper in their character. They do not in anywise change the cause of action. They do not contradict in any way the averments of the original bill, and they are not materially inconsistent therewith. If the amendments were obnoxious to either of these three objections last suggested, it would undoubtedly have been the proper practice to require a sworn showing that the statements made in the original bill, which the amendments contradict or alter, were made by excusable mistake before permitting the amendment. The amendments merely enlarged and amplified the statements of the bill, so far as the charges therein contained were concerned. In addition, the prayer was altered, and words designating certain of the complainants as co-partners composing a firm within the complainant co-partnership, and words describing one of the complainants as an administrator, were omitted. Under these circumstances, the cases of *Gregg* v. *Brower*, 67 Ill. 525, *Bauer Grocer Co.* v. *Zelle*, 172 id.

407, and *Fowler* v. *Fowler,* 204 id. 82, warrant the conclusion that the court did not err in permitting the amendment to be made.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE MAGRUDER, specially concurring:

I concur in the conclusion reached by this opinion and in the opinion itself, so far as it holds that, where a village board has by resolution granted to the owner of a telephone line the use of its streets and alleys in which to set poles and to string wires for telephone uses, and has, by ordinance subsequently passed, recognized the existence of the right so granted, such grant, where it has been set apart and acted upon by erecting poles and stringing wires, is valid. That is to say, such resolution, when followed by an ordinance recognizing the existence of the right granted by the resolution, will be upheld; but the resolution itself, if there were no subsequent ordinance recognizing the existence of the right granted by it, would not be a sufficient authority to confer such right.

I think that the granting of the use of the streets for the purposes named in the opinion must be deemed a legislative act; that any action of a city council or village board, the effect of which is to grant to a corporation the use of the public streets, must be regarded as legislation of the highest character. Such a grant can not be accomplished by a mere resolution.

In *Chicago and Northern Pacific Railroad Co.* v. *City of Chicago,* 174 Ill. 439, it was held by this court that the act of the city council in establishing the grade of a street is legislative in character, and must be put in the form of an ordinance, and not a mere resolution or order. The views upon this subject, expressed in *Chicago and Northern Pacific Railroad Co.* v. *City of Chicago, supra,* including the interpretation therein given to the case of *City of Quincy*

v. *Chicago, Burlington and Quincy Railroad Co.* 92 Ill. 21, have been approved and adopted in the following cases, to-wit: *Village of Altamont* v. *Baltimore and Ohio Southwestern Railway Co.* 184 Ill. 47; *Claflin* v. *City of Chicago,* 178 id. 549; *Brewster* v. *City of Peru,* 180 id. 124; *Shannon* v. *Village of Hinsdale,* id. 202; *People* v. *Mount,* 186 id. 560; *Craig* v. *People,* 193 id. 199. If the establishment of a street grade cannot be accomplished by a resolution, but must be effected by an ordinance, surely the granting of the use of a public street to a corporation should be by the high legislative act of an ordinance, and not by a mere resolution. In the case of *City of Quincy* v. *Chicago, Burlington and Quincy Railroad Co.* 92 Ill. 21, such a grant by a resolution was upheld simply because of the recognition of the rights of the corporation under the resolution referred to in that case for a period of over twenty years, and the resolution was there held to be binding because of the deed made under it and the long possession held under such deed. The case is not authority for the position that such grant can be made by a resolution alone.

One of the reasons, why it is an unfortunate doctrine to hold that the use of the streets can be granted to a corporation by a mere resolution is the fact, that resolutions do not need to be submitted to the mayor for his approval. As was said in *People* v. *Mount, supra,* (referring to authorities): "The wise and salutary provision of the statute, which clothes the mayor with the veto power, may be defeated by a city council by the simple election on its part to change the form of its legislative acts into resolutions, instead of embodying them in ordinances, if it be true that municipal legislation can be accomplished by mere resolutions." The mayor cannot exercise his supervisory power over the action of the council if important municipal legislation takes the form of a resolution. The responsibility to the People can be less easily evaded in the case of an individual than in the case of a body of men. Where so important an act

is done by the common council as the granting of the use of the public streets to a corporation, the mayor should have the power to veto such act if, in his judgment, the granting of the privilege or franchise is unwise, and against the interests of the people.  This supervisory power of the mayor is apt to be defeated where the result is to be accomplished by a mere resolution, instead of an ordinance.

Afterwards, on April 6, 1904, upon the consideration by the court of the petition for rehearing filed herein, Mr. JUSTICE SCOTT, speaking for the court, delivered the following additional opinion:

It is now insisted the majority opinion heretofore filed in this cause, in so far as it holds that a natural person may acquire the right to maintain poles and wires for telephone purposes in the streets of a city or village, is in conflict with the case of *Goddard* v. *Chicago and Northwestern Railway Co.* 202 Ill. 362.  In that case it is held that the right to operate a street railway in this State is one that can be acquired and exercised, under existing laws, only by a corporation.  Sections 11 and 12 of chapter 134 of Hurd's Revised Statutes of 1901 expressly recognize the right of natural persons to engage in the telephone business outside the incorporated limits of cities and villages, and we think that business one in which such persons may engage within cities and villages, subject, of course, to the limitation that they can not exercise the power of eminent domain.  The case at bar is thus distinguished from *Goddard* v. *Chicago and Northwestern Railway Co. supra.*

The petition for rehearing will be denied.

*Rehearing denied.*