THE PEOPLE ex rel. Walter W. Williams

v.

JAMES A. ROSE.

*Announced orally October 18, 1904.*

1. ELECTIONS—*what not an election to stand by certain certificate of nomination.* Filing objections to one of two certificates of nomination by the same party for the same office is not such an election by the objecting nominee to stand by the other certificate as will bar him from representation under the certificate objected to, when the latter is held by the proper tribunal to be the only valid certificate.

2. SAME—*decision of county judges as to validity of certificate of nomination is final.* Where a candidate nominated by two conventions of the same party under the same party appellation for the same office files objections to one of the two certificates of nomination, the decision of the county judges to whom the matter is referable that the certificate of nomination objected to is valid is final, and the objecting nominee is entitled to have his name go upon the ticket in accordance with such certificate.

ORIGINAL petition for *mandamus.*

C. H. LAYMAN, for relator.

H. J. HAMLIN, Attorney General, for respondent.

Mr. CHIEF JUSTICE RICKS announced the opinion of the court:

At a former day of this term leave was granted to file a petition for a writ of *mandamus,* and to the writ as filed a demurrer was interposed by the Secretary of State, the respondent. The petition sets forth that in the Fiftieth Senatorial district, at Jonesboro, on the 30th day of August, two democratic conventions were held for the nomination of a Senatorial ticket, and that at one of these conventions Addison M. Brownlee and Walter W. Williams were, respectively, nominated for the offices of representative; that the certificate of that nomination was filed on the 31st day of August

with the Secretary of State. On the same day, and by the other convention, one Sidney B. Espey was nominated for State Senator and Walter W. Williams for Representative. That certificate was filed about the 10th of September. After both of these certificates had been filed, as the certificates upon their face appeared to be regular and as the Secretary at that time seemed to entertain the view that both properly belonged under the same party appellation, the relator was notified of the fact that there appeared two certificates with his name for the same office, and that unless objections were filed to one or the other of the certificates both lists of candidates would pe printed under the same party appellation, but stated in the letter that they would be printed as contained in the certificates; that Williams' name would appear twice under the same party appellation and Brownlee's name would also appear, and opposite the name of Williams in one of the places would appear, "Williams 3 votes," as by the Espey certificate, as we may term the certificate by which Espey was nominated, it was specified that Williams was to have three votes. Subsequently the Secretary of State probably became doubtful just what to do in the situation under the circumstances, and feeling that there was not much discretion vested in him in the matter, notified the relator that he would be required to elect, under the statute, which group of nominees he would remain with. The statute provides that where the name of a candidate appears upon two tickets, or rather in two groups of nominees or candidates, the person may be required to elect. It appears that this notice to elect was mailed to the relator at his home address on the 19th of September. The relator states in the petition that at that time he was in St. Louis attending the exposition and that he remained there until the third of October and did not in that time receive the notice that was sent to him to elect, but that during his absence persons representing him as his attorneys filed with the Secretary of State objections to the Brownlee and Williams certificate of nomination. The Secretary then notified relator that although he had not formally elected between the

two certificates, yet having filed objections by his attorneys to the Brownlee and Williams certificate he would be treated as having elected to stand by the Espey and Williams certificate, and that the matter of the validity of the two certificates, objections having been filed, would be submitted to the county judges of the five counties comprising the Senatorial district. This was done, and on the 10th of October the judges met and decided that the Brownlee and Williams certificate was the only valid certificate filed; that the convention that made that certificate was a regularly called and constituted representation of the party, and that that nomination was regularly made; but the Secretary of State taking the view that relator had by his objection to the Brownlee and Williams certificate elected to stand by the other, could not, therefore, appear on any, and declined to certify his name to the county clerks to have it entered upon the official ballot. The relator then made a demand upon the Secretary that he should certify his name, and that being declined, this petition was filed, and, as has been said, the demurrer filed to it.

The demurrer raises the question of the election, which is the principal question here. It is the view of the court that the purpose of this statute requiring an election was to avoid allowing the name of any candidate to appear in more than one place or under more than one party appellation on the official ballot; that a man should not be allowed to be nominated by all the parties and his name scattered over the ballot, but that he should be required to elect as to which of the political party appellations or groups he desires his name to appear and remain under upon said ballot. There is no question, or can be little question, but that these two certificates belonged under the same party appellation. They belonged to the same group of candidates. Both of these conventions by their certificates assert that they were the democratic convention of that district, and whatever course the Secretary might have taken or view he might have taken of the two certificates, he would not have put their names

under different party appellations or in different groups, and in that view it may be seriously doubted if the Secretary had any right to require an election.

There is still the other view that the very act that the Secretary treated as an election was an objection to one of the certificates, which put in operation the legal machinery, to-wit, the reference to the five county judges to determine which of these certificates was the legal representation of the democracy of that district; and it was apparent from the face of the certificates that both of them could not stand, because one of them called for three votes for Williams for the office of representative and the other was blank as to the number of votes he should receive. The one upon the Brownlee ticket, of course, in which he and Brownlee were both nominated for representative, was silent and would leave the voter to vote as he saw fit. Therefore, as between a void certificate,—one or the other was void and so declared by the court,—as between a void certificate and a valid certificate it can hardly be said that a nominee from the same party, under the same party appellation and group of nominees, could be put to his election; especially so when the act that it was said did make his election was to submit the very question of the validity of the two certificates to the body that was vested with the power to finally determine that question.

The county court,—the five county judges,—the body to which the matter was, under the statute, properly referable, having decided that the certificate certifying the nomination of Brownlee and relator for the offices of representative was a valid nomination, we think the decision of that body is final, and that relator is entitled to have his name go upon that ticket, and the writ of *mandamus* will issue accordingly.

*Writ awarded.*