## UNITED STATES ex rel. WHITE v. WALSH.

### No. 9635.

United States Court of Appeals Seventh Circuit.

April 20, 1949.

KERNER, Circuit Judge, dissenting.

William J. Tuohy, State's Atty., and James V. Cunningham, Asst. State's Atty., both of Chicago, Ill. (John S. Boyle, State's Atty., of Chicago, Ill., John T. Gallagher and W. S. Miroslawski, Asst. State's Attys., both of Chicago, Ill., of counsel), for appellant.

Joseph I. Bulger and Ode L. Rankin, both of Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, KERNER, Circuit Judge, and LINDLEY, District Judge.

LINDLEY, District Judge.

This is an appeal from a judgment in a habeas corpus proceeding discharging relator from custody under sentence for six months imprisonment for contempt of court, because of his refusal to comply with a judgment for a writ of mandamus awarded by the Superior Court of Cook County, Illinois. Our ultimate question of whether the sentencing court was without statutory authority to issue the contempt order, as the District Court found, in turn, depends upon whether that court had authority to issue the writ which relator refused to obey, for, if the order for the writ was

void, the contempt order was likewise a nullity. Decision upon these questions necessitates a somewhat extended consideration of the facts and the applicable Illinois law.

Relator White was elected clerk of the village of Lyons, Cook County, Illinois, in 1941, for four years ending April 30, 1945. In March, 1945, as such clerk, he received nominating papers of the "Regular People's Party," naming candidates for village officials in the election to be held April 17, 1945. These candidates had been nominated by a party caucus, and the certificates included the necessary statutory showing that the party was organized and legally existing in the village. Two electors filed objections, alleging that the village had a population of over 5000, a fact which, if true, under the Illinois Statute, precluded nomination by caucus. Ill.Rev.Statutes, Chapt. 46, Sec. 10—1 to 10—10.

This simple issue being thus joined, it was necessary to resort to the statutory means prescribed for deciding it. The Election Code of Illinois creates a "Municipal Officers Electoral Board" composed of the village president, as chairman, the clerk, and the senior trustee and provides that "The * * * board * * * shall decide whether or not the certificate of nomination or nomination papers on file are valid or whether the objections thereto should be sustained and the decision of a majority of the * * * board shall be final", and that, within 24 hours after it has reached its decision, the board shall report its proceedings to the clerk who "shall abide by and comply with the ruling so made." Ill.Rev.Stats., Chapt. 46, Sec. 10—10.

■ Provisions similar to the one in this statute, that the decision of a majority of the board "shall be final", have been construed many times by the Illinois courts. Thus the Supreme Court of Illinois, in People ex rel. Murray v. Rose, 211 Ill. 249, 71 N.E. 1123, said: "The legislature, by the act named, has created a special forum or court to which such matters are referable, and that body has seen fit to declare by statute that the decision of the body there provided for shall in such matters be final. * * * the judgment of the proper tribunal has been invoked, and has been received; and, although it may be contrary to the law, as contended by the relators, that does not at all interfere with the jurisdiction of the body that tried it, and does not authorize us, in a proceeding for mandamus, to review the action of such tribunal". To the same effect are People ex rel. Williams et al. v. Rose, 211 Ill. 259, 71 N.E. 1125; People ex rel. McKinlay v. Rose, 211 Ill. 252, 71 N.E. 1124; People ex rel. Perry v. Koerner, 365 Ill. 521, 6 N. E.2d 870. Hence, only if the board was illegally constituted or acted arbitrarily or fraudulently, were its actions subject to judicial review, People ex rel. Martin et al. v. White et al., 329 Ill.App. 81, 67 N.E.2d 498, 504; otherwise its decision was final and conclusive.

The president of the village board was a candidate for re-election. Under the statute, in such a contingency, his duties as chairman of the electoral board devolved upon the county judge, the Honorable Edmund K. Jarecki. As soon as he received the objections to the nominating papers, the clerk forwarded the papers and the objections to Judge Jarecki, who then called, for March 23, 1945, a meeting of the board consisting of: Judge Jarecki, chairman; Ralph White, (village clerk), and Louis Hoffman, (senior village trustee). At the hearing, a dispute developed as to whether the federal census or a later village census was the proper basis for determination of the village population. The chairman read the Illinois statute; announced that he believed that the federal census of 1940, showing 4,960 inhabitants, controlled, and voted to overrule the objections and to place the candidates' names on the ballot. The other two members, constituting a majority of the board, were of the opinion that the municipal census, showing more than 5,000 inhabitants, controlled; hence, they voted to exclude the names from the ballot.

The candidates challenged the right of White to participate as a member of the board on the ground that he was not the village clerk. This contention was not considered but, after the vote had been taken, the chairman agreed to hold up the board's decision until noon on March 27, so that counsel might have opportunity to seek a

determination in court of whether White had a right to sit as a member. Thus, it appears that no final action was taken at this hearing.

The court proceeding referred to was a petition for mandamus filed in the Circuit Court the previous day, praying that the board be dissolved, in which Judge Jarecki was sole defendant. The petition, as amended, averred that one Joseph Janda, not White, was clerk. Without White or Janda having been made parties, an order was entered finding that White was not clerk and that the board was, therefore, illegally constituted. The court directed the chairman to dissolve the board and return all papers to the village authorities. Judge Jarecki then wrote White, as clerk, enclosing the papers and stating that the Circuit Court had issued a writ of mandamus "on the ground that the board was illegally constituted", and, further, that the "mandamus action automatically ends the action."

On the following day, March 27, at noon, the members of the board and the interested parties, pursuant to adjournment, met in the chambers of Judge Jarecki, who reported that he had returned the papers to White, in pursuance of the Circuit Court's order. When the other two members expressed their desire to complete their consideration and determination of the matter, Judge Jarecki declined to participate further. White and Hoffman then retired to the county clerk's office and there completed the proceeding; passed and directed the filing of a resolution reciting that White was the duly elected, qualified and acting village clerk and that the village population exceeded 5,000 and resolving that the nominations in question were, therefore, invalid and sustaining the objections and adjourned. Report of the board's action was filed in the village clerk's office and the several candidates affected were notified that their names would not appear on the ballots.

The candidates then requested the Circuit Court to adjudge White and Hoffman in contempt of the judgment in mandamus because, subsequent to its entry, they had completed and filed the record of the proceeding. The court, however, held that it had no jurisdiction to do this, inasmuch as neither of those men had been made parties to the mandamus action and reminded counsel that the court had so advised him when he applied for judgment, but that counsel had replied that he did not want to make them parties because they would then have the right to appeal. Commenting further on the omission of White and Hoffman as parties, Judge Fisher very aptly and appropriately remarked: "If, consciously, the court could proceed in a mandamus case against one of numerous parties and issue its mandate to him, and then hold the others, who are not parties to the law suit, accountable for the performance of the mandate, there would be a very fine opportunity to deny to those parties due process of law." This comment was undoubtedly inspired by the court's familiarity with well known ruling principles announced in such decisions as that in Baker v. Baker, Eccles & Co., 242 U.S. 394, 403, 37 S.Ct. 152, 155, 61 L.Ed. 386: "The fundamental requisite of due process of law in judicial proceedings is the opportunity to be heard. * * * To hold one bound by the judgment who has not had such opportunity is contrary to the first principles of justice."

However, the day before this ruling by Judge Fisher, the candidates had filed a complaint in the Superior Court against White and Janda for a writ of mandamus to compel the candidates' names to be placed on the ballot, in which petitioners averred that Janda, not White, was clerk, and requested the court so to determine. In his answer, White set forth the proceedings before the board, averred that he was clerk, and challenged the court's jurisdiction to review the decision of the board. The candidates made no reply to White's answer, but offered a transcript of the record of what had transpired in the Circuit Court in the cause wherein Judge Fisher had refused to act against White because he was not a party. Without trial of any issue, the application was granted by the Superior Court and judgment entered. The court directed its order to both White and Janda, directing them to destroy the prepared ballots and to substitute new ones containing the names of the petitioning candidates.

Neither White nor Janda complied. Thereupon they were ordered to show cause why they should not be held in contempt. White answered, setting up absence of jurisdiction of the court to issue the mandamus order and claiming lack of due process of law and violation of both state and federal constitutions. He again averred that he was clerk. At the hearing, White testified that at all times concerned he was clerk and the court expressly found "that the respondent, Ralph E. White, was the village clerk of the village of Lyons between the period from the filing of the mandamus suit in this proceeding and up to and including the 17th day of April, A.D. 1945." The formal order which followed included the specific finding that White was clerk during all the time concerned.

It must be remembered that the only ground ever asserted for a court decision that the electoral board was not legally constituted was that White was not clerk. In other words, the candidates built their case wholly upon the proposition that the board was illegally constituted for the sole reason that White was not clerk, and that, therefore, the Superior Court had jurisdiction to review its proceedings in a mandamus suit. Yet in the proceeding in which authority of the court to act was based upon an averment that White was not clerk, the court expressly found that he was, in fact, clerk at all times. That being so, the board was legally constituted and its action final and binding in the courts, unless arbitrary or fraudulent. To us it is an anomalous and startling doctrine that a court, depending solely upon a specific fact for its jurisdiction, may, when it finds that that fact does not exist, persist in exercising jurisdiction.

White prosecuted appeals to the Illinois Appellate Court from both the mandamus and contempt orders of the Superior Court. The appeals were consolidated and the judgments affirmed in People ex rel. Martin et al. v. White et al., 329 Ill.App. 81, 67 N.E.2d 498, 501. In this appeal, White's chief contention, as it had been throughout, was that the Superior Court had no jurisdiction to review the action of the board. We have observed that the courts of Illinois have construed the applicable section and similar sections of the Illinois statutes to mean that the decision of the board is final when it is reached by a legally constituted board, acting in a legal manner, and not fraudulently or arbitrarily. In arriving at the conclusion that the board's action was subject to judicial review, the Appellate Court made the following statement: "Respondents contend that courts have no jurisdiction to review the judgment of an electoral board, and in support of that contention they rely upon People ex rel. Murray v. Rose, 211 Ill. 249, 71 N.E. 1123; People ex rel. McKinlay v. Rose, 211 Ill. 252, 71 N.E. 1124; People ex rel. Williams v. Rose, 211 Ill. 259, 71 N.E. 1125, and People ex rel. Perry v. Koerner, 365 Ill. 521, 6 N.E.2d 870. * * * The decisions upon which respondents rely can be readily distinguished under the facts in this proceeding. *Since no decision on the objections in the instant case was made by a validly constituted electoral board,* relators had the right to have their names placed upon the ballot. * * In People ex rel. Murray v. Rose and People ex rel. Williams v. Rose decisions on objections to nominees had been made by validly constituted electoral boards, * *." (Italics supplied.)

Thus, the Appellate Court's only foundation for its conclusion was that the board was illegally constituted and its order, therefore, void. Yet the only ground ever asserted for holding that the board was not validly constituted was that White was not village clerk, whereas the Superior Court based its contempt order upon its finding that White was clerk. Thus, we find the Appellate Court, apparently inadvertently relying on the Circuit Court order, which was ex parte, so far as White was concerned, and which the issuing Judge himself declared void as against White and refused to enforce.[1]

---

[1] That the court relied upon the ex parte Circuit Court decision seems apparent from its language: "In the case at bar the mandamus judgment in the Circuit Court specifically found that White was not the Village Clerk, thereby disqualifying him from membership on the electoral board, and consequently that the board was not legally constituted to pass on the objections to relators' nomination papers."

However, the Appellate Court added that, even assuming that the board was legally constituted, the Superior Court had jurisdiction to review the action of a board "which was so clearly an abuse of power and so arbitrary as to amount to fraud." It will be remembered that the objections to the validity of the nominations of the Regular People's Party candidates were predicated solely on the averment that the population of the village of Lyons was over 5,000. If, in fact, the official population exceeded 5,000, the objections were well taken and the candidates were not entitled to have their names printed on the ballot. The record is barren of any evidence of any fraudulent conduct upon White's part in receiving the objections to the nominations or in the board's decision. Nor did White instigate the filing of the objections; in fact, it appears undisputed that they were filed by two dissatisfied members of the Regular People's Party. It is clear, therefore, that the Appellate Court's conclusion that the board acted arbitrarily was based solely upon the premise that the population of Lyons did not exceed 5,000.

The record shows that the following Resolution was adopted in 1942 by the board of trustees of the village:

Whereas, the population of the Village of Lyons has been increasing for the past two years and a census has not been taken for some time; and

Whereas, because of the war, the Defense Corps of the Office of Civilian Defense have completed a survey and census in co-operation with the Village Officials, and

Whereas, it is shown by a canvass of the registration returns of the various enumerators that the population shows the sum to be a total of 5,424 persons residing in this Village at this time.

Now therefore, Be it resolved by the President and Board of Trustees, that the registration and enumeration of persons residing in the Village of Lyons, by the Defense Corps of the Office of Civilian Defense of Lyons, Illinois, which census has been taken under the auspices and in co-operation with the Village Officials, showing the population to be a total of 5,424 persons, and the same is hereby adopted as the official Village Census of the Village of Lyons, Illinois.

That copies be filed with the Secretary of State and the U. S. Dept. of Commerce.

Passed and adopted this 11th day of August 1942.

Approved
Theofil T. Bulat
President.
Attest—Ralph E. White
Village Clerk.

This Resolution was apparently not formally introduced in evidence at the hearing before the board. But Section 1—9 of the Illinois Election Code, Ill.Rev.Stats., Chap. 24, Sec. 1—9, provides that: " * * * the several courts in this state shall take judicial notice of the population of any municipality, as the population appears from the latest Federal, State, or municipal census so taken."

In the proceedings before the electoral board there appears to have been some confusion as to the applicable statute governing determination of the population. The record shows that the chairman read from the Cities and Villages Act of 1872, Laws 1871–72, art. 10, § 7, p. 260, which contained the provision that "any city or village may, by ordinance, provide for the taking of a census of the population", which remained in the statute until 1941, when the section was amended by eliminating the quoted words. Hence, the applicable statute, at the time the board conducted its proceedings, did not require determination of population by ordinance. That statute reads: "Whenever in this Act any provision thereof is based upon the number of inhabitants, the number of inhabitants of the municipality shall be determined by reference to the latest census taken by authority of the United States or this State, or of that municipality. It is the duty of the secretary of state, upon the publication of any State or United States census, to certify to each municipality the number of inhabitants, as shown by that census. And the several courts in this state shall take judicial notice of the population of any municipality, as the population appears from the latest Federal, State, or municipal cen-

sus so taken." Chapter 24 Ill.Rev.Stat., Section 1–9. Hence there was, at the time the resolution fixing the population was adopted August 11, 1942, no requirement that the trustees' action be by enactment of ordinance. The legislature, by deleting the requirement, clearly evinced an intent to do away with it and to permit the board of trustees to act, as it did, by resolution. Where the mode of exercise of municipal power is not prescribed in the statute conferring the power or in some other statute, the power may be exercised by resolution as well as by ordinance. Mound City v. Mason, 262 Ill. 392, 395, 104 N.E. 685; Chicago & N. P. R. Co. v. City of Chicago, 174 Ill. 439, 445, 51 N.E. 596; Village of London Mills v. Fairview-London Tel. Circuit, 105 Ill.App. 146, 149, affirmed in Village of London Mills v. White, 208 Ill. 289, 296, 70 N.E. 313; City of Quincy v. Chicago, B. & Q. R. Co., 92 Ill. 21; City of Alton v. Mulledy et al., 21 Ill. 76, 78; 43 C. J. 250. If courts must take judicial notice of the latest municipal census, we fail to see how it can reasonably be urged that the board acted illegally or arbitrarily when it took similar notice and expressly found the population to be in excess of 5,000. Indeed legislative or administrative notice is much wider than judicial notice. 23 C.J. 58; 32 C.J.S., Evidence § 6. White and Hoffman surely knew of the village census, for they were village officers participating in the adoption of the resolution certifying it, and White attested it. Furthermore, under the express terms of the statute, the Superior Court was bound to take judicial notice of the village census and hence could make no proper finding other than that the village population was in excess of 5,000.

Following affirmance of White's conviction by the Appellate Court, 329 Ill.App. 81, 67 N.E.2d 498, 504, the Illinois Supreme Court denied leave to appeal, 331 Ill.App. XIV; the United States Supreme Court denied certiorari, White v. People ex rel. Martin, 330 U.S. 842, 67 S.Ct. 1082, 91 L. Ed. 1288; the Illinois Supreme Court denied leave to file a petition for a writ of habeas corpus; a petition for a writ in the nature of a writ of error coram nobis was dismissed by the Superior Court of Cook County; and a petition for a writ of habeas corpus was dismissed by the Circuit Court of Cook County.

It is entirely clear on the record that the two essential questions upon which the Superior Court's jurisdiction to review the board's decision entirely depended, were, first, was the board legally constituted; and second, if so, was its decision arbitrary. If the first inquiry is properly answered in the affirmative and the second in the negative, the board's decision was final and there was left no legal foundation whatever for court interference. That the first question must be answered in the affirmative is clear from the fact that the Superior Court eventually found that White was clerk, for, that being so, the board, admittedly was legally constituted. That the second inquiry must be answered in the negative is obvious from what we have said, for the board, bound to take notice of the latest village census, with jurisdiction of the parties, rightfully determined the population and held, as night follows day, that the candidates were not legally nominated by a caucus. Such is the mandate of the statute. Consequently, inasmuch as the board was legally constituted, and as its determination was based upon an incontrovertible fact, its decision was, under the statutes and the decisions of Illinois, one with which no court had authority to interfere.

We are fully aware of the rule that if a court's jurisdiction of the subject matter is dependent upon certain facts necessarily precedent to its authority to act, and the court makes findings of fact supported by evidence showing that the conditions have been met, the resulting judgment is binding upon the parties in a habeas corpus proceeding, even though the findings as to jurisdiction are erroneous. But there is a further well established rule properly applicable to the case at bar. If the facts essential to authority to act are wholly lacking or if the finding, on the face of the record, is irreconcilable with the conclusion that the conditions precedent to existence of the court's authority to act have been met, then the power of the court to proceed to judgment never comes into being, because of lack of proof of the essential conditions. This rule prevails where the want of juris-

diction appears upon the face of the record, or where the record affirmatively shows absence of proof of conditions necessary to give the court authority to exert its authority. 31. Am.Jur. Sec. 604, p. 200, citing cases. So, a recital in a judgment of the presence of a jurisdictional fact may be impeached by a positive contrary showing by the remainder of the record upon which the judgment is based. 31 Am.Jur. Sec. 605 and Sec. 421, citing cases. A fortiori, where it appears from the face of the record that the court did not have power to act, there is nothing to preclude inquiry into the facts or to prevent declaration of the invalidity of the judgment. 31 Am.Jur. Sec. 426, p. 88 and cases cited.

Examining the Illinois authorities, we find that in Forrest v. Fey et al., 218 Ill. 165, at page 169, 75 N.E. 789, at page 791, 1 L.R.A.,N.S., 740, 109 Am.St.Rep. 249 the court said: "In the absence of jurisdiction to pronounce a decree it (the judgment) is absolutely void, and may be attacked either directly or collaterally. * * * if there is an affirmative showing in the record that there was no jurisdiction the judgment or decree will be void." See also Osgood v. Blackmore, 59 Ill. 261; Sharp v. Sharp, 333 Ill. 267, 164 N.E. 685. And, in Way v. Way, 64 Ill. 406 at page 408, the court announced: "The question of jurisdiction, then, became one of fact, to be determined upon the hearing. * * * When the want of jurisdiction clearly appeared during the progress of the trial, it was the right and duty of the court, under the pleadings, to have dismissed the bill." This decision was approved in the later case, Becklenberg v. Becklenberg, 232 Ill. 120, 83 N.E. 423.

An enlightening case is People v. Shurtleff, 355 Ill. 210, 189 N.E. 291, 294. There, respondent, a Circuit Judge, had, on an application for a writ of habeas corpus, discharged a prisoner from imprisonment. The Attorney General sought mandamus in the Supreme Court directing respondent to expunge the discharge order on the ground that the court was without power to issue it. The Supreme Court said: "The primary question in this case is the existence or nonexistence of jurisdiction in the respondent to enter the order discharging Sammons. Jurisdiction of a tribunal does not depend upon actual facts alleged but upon authority to determine the existence or nonexistence of such facts and to render judgment according to its finding. People v. Superior Court, supra [234 Ill. 186, 84 N.E. 875; 14 Ann.Cas. 753]. If it develops in the course of a proceeding that the court does not have jurisdiction in the particular case, any order except one dismissing the proceeding is void." (Italics supplied.) " * * Whenever the want of jurisdiction becomes apparent, the proceedings of the court thereafter are absolute nullities. * * * Although the court had jurisdiction in the first instance to entertain the application for the writ, it follows that the rule is subject to the limitation that, if in a particular proceeding it appears at any time that the court did not have jurisdiction, no order but one dismissing the petition can be entered."

"A finding by a court that it has jurisdiction in a case is always overcome when the finding is irreconcilable with the facts disclosed by the record. (Italics supplied.) In such a case the record impeaches itself, as it did in the case of People v. Kelly, supra [352 Ill. 567, 186 N.E. 188]. It has never been held where the record itself shows that the evidence of jurisdiction upon which the court acted was insufficient, that its finding in favor of jurisdiction was conclusive. Senichka v. Lowe, 74 Ill. 274. It would be absurd to say that such finding was conclusive when the very record shows that the finding itself was void for want of jurisdiction. Goudy v. Hall, 30 Ill. 109. The return in this case and the answer and traverse showed a lack of jurisdiction. According to an unbroken line of authorities, the respondent was rendered powerless to proceed further except to dismiss the petition, and the order of discharge was null and void." In Bilokumsky v. Tod, 263 U.S. 149, at page 153, 44 S.Ct. 54, at page 56, 68 L.Ed. 221, the court said: "It is also true that, if the Department makes a finding of an essential fact which is unsupported by evidence, the court may intervene by the writ of habeas corpus. Zakonaite v. Wolf, 226 U.S. 272, 274–275, 33 S.Ct. 31, 57

L.Ed. 218." See also Ng Fung Ho v. White, 259 U.S. 276, at page 284, 42 S.Ct. 492, 66 L.Ed. 938.

So, in this case, the mandamus petition rested on the premise that the board was illegally constituted. This gave the court jurisdiction to entertain the petition. Legality of the constituency of the board then became a jurisdictional fact. Once it appeared that the board was legally constituted, the court no longer had jurisdiction to proceed, and any order other than one dismissing the petition was absolutely void. The Illinois cases make it clear that the actions of an electoral board are subject to judicial review only under limited circumstances. If the record shows that such circumstances do not exist, then any attempt to control judicially the board's actions is not mere error "in the exercise of the court's jurisdiction" but an exercise of authority without right.

The record is absolutely devoid of any evidence that there was any defect in the organization of the Board or that the population of the village was less than 5,-000. Evidence of at least one of these alleged defects was essential before the court had any authority to interfere. When the Superior Court entered the judgment in mandamus it made no finding whatever as to whether White was clerk; yet a finding that he was not clerk was a condition precedent to the court's authority to act, for if he was clerk, then the board was organized in compliance with the provisions of the statute and its decision upon evidence, under the express terms of the statute, final. Thus the record in the proceeding in mandamus in the Superior Court contained no evidence that the court had jurisdiction to interfere with the order of the board. Not only that but, when the relator failed to comply with the order and came before the court on an order to show cause why he should not be adjudged in contempt, the undisputed proof and the finding of the court was that White was then and had been at all times village clerk and the court expressly so found. This was complete, direct and explicit proof of record that the court was without jurisdiction to enter the mandamus order, for that order was granted solely upon the postulate that the board

was not legally constituted and yet, before the order in mandamus was appealed and before White was adjudged in contempt, the court expressly found the facts showing not that it had jurisdiction but in fact that it had no power to act, except to dismiss the petition. This is not a case where a finding, based on evidence that the court had jurisdiction, even though erroneous, must stand, but one where, on the face of the record, the court itself found the facts to be such that never at any time did the court have power to act in the litigation.

We would have no hesitancy in deciding that the District Court was without jurisdiction if it were clear in the record that there was substantial evidence to support a finding, first that the Board was illegally organized (i. e., that White was not in fact Clerk of the Village) or the further conclusion that the decision of the Board was arbitrary or unreasonable (i. e. in deciding that the population of the village exceeded 5,000), for in such a situation, the court having found from evidence the facts essential to its jurisdiction upon substantial evidence, the only remedy of the defendant would lie in the ordinary method provided by the state law for review of the court's decision. But we cannot escape the fatal defect of a decision wholly lacking in evidence essential to jurisdiction or authority to act.

There is no evidence whatever in this record, substantial or otherwise, of arbitrary action by the board. Its conclusion that the population of the village exceeded 5,000 was a finding based upon undisputed evidence and, hence, could not be said to be arbitrary, for the village census, of which under the statutes of Illinois all courts must take judicial notice, discloses that the factual conclusion of the Board was correct and indisputable. So the power of the court to act having been questioned and it being clear under the statute of the state that it was without power to proceed in the absence of proof of the two facts, that is, the nonclerkship of White and a population of less than 5,000, and there being no evidence whatsoever to support either of these conditions precedent to the authority of the court to act, the judgment of the court was, under the statutes of Illinois, void and of

58

no avail, and hence in violation of the due process clause of the constitution. Smith-Hurd Stats. Const. Art. 2, § 2.

Appellant contends that the District Court was without jurisdiction to consider the habeas corpus petition because the relator has not exhausted state remedies in that he did not, (1), invoke review of the coram nobis proceedings or, (2), file a petition for certiorari in the United States Supreme Court to review the dismissal of the habeas corpus proceeding. We are not unmindful of the oft quoted rule of Ex Parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572, to the effect that a federal court will not ordinarily entertain a habeas corpus petition filed by a state prisoner unless and until state remedies have been exhausted. But it has always been recognized that the rule is not absolute. "It is the delicacy of the jurisdiction rather than the jurisdiction itself which has led the Federal courts to insist that the State courts should be given ample opportunity to deal with the question before the Federal court attempts to exercise its jurisdictional power." Dooly v. Mahoney, D. C., 42 F.Supp. 890, 892. In the Hawk case the Supreme Court recognized that the federal courts may, in "exceptional" cases entertain a habeas corpus petition even though, technically, state remedies have not been exhausted, saying: "where resort to state court remedies has failed to afford a full and fair adjudication of the federal contentions raised, either because the state affords no remedy, see Mooney v. Holohan, supra, 294 U.S. [103], 115, 55 S.Ct. [340] 343, 79 L.Ed. 791, 98 A.L.R. 406, or because in the particular case the remedy afforded by state law proves in practice *unavailable* or seriously *inadequate*. (Italics supplied.) cf. Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543; Ex parte Davis, 318 U.S. 412, 63 S.Ct. 679 [87 L.Ed. 868], a federal court should entertain his petition for habeas corpus, else he would be remediless. In such a case he should proceed in the federal district court before resorting to this Court by petition for habeas corpus." [321 U.S. 114, 64 S.Ct. 450.]

As to relator's failure to pursue the remedy in the nature of coram nobis, we think it clear, under the Illinois authori-ties, that that remedy is not available. The Illinois statutory motion in the nature of a writ of error coram nobis is available only to present factual questions which were not known to the trial court, which do not conflict with the Jury findings, and which the prisoner failed to raise because of excusable mistake on his part. People v. Rave, 392 Ill. 435, 65 N.E.2d 23. If the errors relied upon were a matter of record, or were before the court at the time of trial, coram nobis does not lie. Jerome v. 5019-21 Quincy Street Building Corporation, 385 Ill. 524, 53 N.E.2d 444. In People v. Touhy, 397 Ill. 19, 72 N.E.2d 827, 830, the court said: "The purpose of the writ of error coram nobis at common law, and of the motion substituted for it by section 72, is to bring before the court rendering the judgment *matters of fact not appearing of record, which, if known at the time the judgment was rendered, would have* prevented its rendition (citing cases)." Other decisions to the same effect are Chapman v. North American Life Insurance Company, 292 Ill. 179, 126 N.E. 732; Linehan v. Travelers Ins. Co., 370 Ill. 157, 18 N.E.2d 178; Cramer v. Illinois Commercial Men's Association, 260 Ill. 516, 103 N.E. 459; People v. Schuedter, 336 Ill. 244, 168 N.E. 323; Marabia v. Mary Thompson Hospital of Chicago, 309 Ill. 147, 140 N.E. 836. Here it is not suggested that any fact affecting the judgment existed, which was not known to the Superior Court. Any mistakes made by that court were in law and not in facts unknown to the court, which if known, would have prevented rendition of the judgment. Hence, under the cited Illinois decisions, the remedy in the nature of coram nobis is not available to the relator.

We have remaining the question of the effect of the relator's failure to seek certiorari in the Supreme Court of the United States in the state habeas corpus proceedings. We pass without decision the suggestion that the present case must properly be considered "exceptional" and other remedies "inadequate"; that relator has been unable to obtain relief in the state courts; that, inasmuch as he was sentenced to serve six months in jail, if he should be required to continue seeking other remedies, not remote is the probability that he

will have been forced to serve his entire sentence before he can present his question to a federal court and that, in such case, his plea will have become moot before it can be heard. For other sufficient reasons, we think, it was clearly within the "sound discretion" of the District Court to take jurisdiction. Thus in United States ex rel. Kennedy v. Tyler, 269 U.S. 13, 46 S.Ct. 1, 3, 70 L.Ed. 138, the court said: "The power conferred on a federal court to issue a writ of habeas corpus to inquire into the cause of the detention of any person asserting that he is being held in custody by the authority of a state court in violation of the Constitution, laws, or treaties of the United States, is not unqualified, but is to be exerted in the exercise of a sound discretion." In Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 267, 67 L.Ed. 543, the court approved the action of the District Court in taking jurisdiction, saying: "We shall not say more concerning the corrective process afforded to the petitioners than that it does not seem to us sufficient to allow a Judge of the United States to escape the duty of examining the facts for himself when if true as alleged they make the trial absolutely void." In the more recent case, Wade v. Mayo, 334 U.S. 672, 68 S.Ct. 1270, 1275, where the relator had failed to seek certiorari from the state court's denial of habeas corpus, the Supreme Court refused to set any rigid rule in these words: "In short, we refuse to codify the failure to invoke the discretionary certiorari powers of this Court into an absolute denial of the district court's power to entertain a habeas corpus application. The prevention of undue restraints on liberty is more important than mechanical and unrealistic administration of the federal courts." See also the opinions of this court in Potter v. Dowd, 7 Cir., 146 F.2d 244 and Spence v. Dowd, 7 Cir., 145 F.2d 451. In short, irrespective of whether the present case is one within those recognizing unusual or exceptional circumstances or inadequacy of any further resort to state remedies, such as Jones v. Commonwealth of Kentucky, 6 Cir., 97 F.2d 335; In re Neagle, 135 U.S. 1, 10 S.Ct. 658, 34, L.Ed. 55; In re Loney, 134 U.S. 372, 10 S.Ct. 584, 33 L.Ed. 949; Wildenhus' Case, 120 U.S. 1, 7 S.Ct. 385, 30 L.Ed. 565; Marsino v. Hogsett, D.C., 37 F.2d 409; Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543 and Wade v. Mayo, supra, remembering the latest announcement of the Supreme Court in the Wade case, we cannot say that the District Court abused its "sound discretion" in assuming jurisdiction.

We conclude that there was never any legal basis for ordering dissolution of the electoral board; that the board was legally constituted; that its members were under the statutory duty to proceed to hearing and to record the vote of the board; that, since the board was legally constituted and did not act illegally, fraudulently or arbitrarily the Superior Court had no jurisdiction to review its action; that the mandamus and contempt orders of the Superior Court were void for want of authority to act, and that relator's imprisonment as a result of those void orders is in violation of the due process clause of the Fourteenth Amendment.

Whether candidates are to be given places on ballots is to be determined from the statutes of the state. If the complaining candidates felt that they should have been placed on the ballot, they should have proceeded as the legislature has provided for villages having populations in excess of 5,000. If they desire to have the law changed, their remedy lies in an appeal to the state legislative bodies; not in recourse to a court which has no jurisdiction to alter legislative acts or to disturb valid administrative orders. As long as the board acted within its statutory authority, it was a violation of White's constitutional rights to imprison him for performing his statutory duty.

The judgment is affirmed.

KERNER, Circuit Judge (dissenting.)

The Superior Court of Cook County, Illinois, is a court of record. It has jurisdiction of all causes in law and equity. Mandamus is such a cause. Jurisdiction is the power to hear and determine the subject matter in controversy between parties to a suit. After a court has acquired jurisdiction its findings are conclusive in all collateral proceedings. If the law confers the

power to render a judgment or decree, then the court has jurisdiction. Jurisdiction, however, does not depend upon the decision of the case, and if the complaint presents questions of a character giving a party the right to invoke the judgment of a court, jurisdiction should be entertained.

In this case a petition for mandamus was filed in a court having jurisdiction to render judgment upon the rights of the parties. If the relators were legally entitled to have their names placed upon the ballot, then that was a right the court could enforce by mandamus. People ex rel. Powell v. Hartley, 170 Ill. 370, 48 N.E. 950. White, the defendant named in the petition, filed an answer, thus the court had jurisdiction of the subject matter as well as of the parties. The cause was tried. The court found that the action of the Electoral Board was an abuse of power and so arbitrary as to amount to fraud, and entered a judgment that the mandamus writ issue. Whether the allegations of the petition for mandamus, or the proofs to sustain them, were true or false, or that the court may have been mistaken in the facts, or may have misconceived the law, did not affect the validity of the judgment, and the judgment, whether right or wrong, was valid and binding until set aside by proper proceedings. White appealed to the appellate court of Illinois. That court affirmed and in its decision said: "* * *; assuming that the decision had been made by a legally constituted board, we are still of the opinion that the superior court had jurisdiction to review by mandamus the action of a board which was so clearly an abuse of power and so arbitrary as to amount to fraud. * * * The only evidence adduced before the board was that the Federal census showed the population of the village to be 4960, and in the absence of any countervailing proof that a State or municipal census taken since 1940 disclosed the population to be in excess of 5000, the electoral board was bound by that evidence and had no alternative except to allow the nomination papers of the relators to be filed. The right of courts to review by mandamus the acts of public officers where they have acted arbitrarily or in abuse of discretion is well settled by numerous decisions in this State holding

that if a discretionary power is exercised with manifest injustice, the courts are not precluded from commanding its due exercise, and as stated in Illinois State Board of Dental Examiners v. People [ex rel. Cooper], 123 Ill. 227, 13 N.E. 201, 202, 'they will interfere, where it is clearly shown, that the discretion is abused. Such abuse of discretion will be controlled by mandamus.'" People ex rel. Martin v. White, 329 Ill.App. 81, 92, 67 N.E.2d 498, 503.

White, still claiming error, filed a petition in the Supreme Court of Illinois for leave to appeal. The petition was denied, 331 Ill.App. XIV, and thereafter the United States Supreme Court denied his petition for certiorari, 330 U.S. 842, 67 S.Ct. 1082, 91 L.Ed. 1288.

Although the majority opinion concedes that "if the board * * * acted arbitrarily or fraudulently" its actions are subject to judicial review, it affirms the District Court on the ground that the Superior Court and the Appellate Court erred in holding that the action of the Board was an abuse of power and so arbitrary as to amount to fraud,—in other words, that the judgment was wrong. However, it goes further and determines that, contrary to other erroneous judgments the error of which can be corrected only by appeal, here the error was such as to render the judgment void. But the trial was before a court having jurisdiction of the person and subject matter. The trial was conducted according to the legal and usual method of procedure and the judgment rendered was the result of due process. In this situation, I cannot agree that the judgment was so vulnerable as to render it subject to collateral attack. Even if it is assumed that the judgment was wrong, a want of due process is not established by showing merely that the decision is erroneous. Vajtauer v. Commissioner, 273 U.S. 103, 106, 47 S.Ct. 302, 71 L.Ed. 560.

Under the circumstances here appearing, it seems to me that my colleagues are permitting White to use the habeas corpus writ as a substitute for an appeal. They are reviewing not only the judgment of the Superior Court, but the decision of the Appellate Court of Illinois. They have permitted the trial of the mandamus proceed-

ing to go for naught and have allowed the District Court to try the case de novo. But the District Judge has no such jurisdiction and he was not at liberty to say that the Illinois courts improperly interpreted the laws of Illinois and then set up his own interpretation as a basis for declaring that due process has been denied. Gryger v. Burke, 334 U.S. 728, 731, 68 S.Ct. 1256. The District Court does not sit to review errors which a state court may make in the administration of its own remedies, if those remedies give due process. Collins v. Johnston, 237 U.S. 502, 35 S.Ct. 649, 59 L.Ed. 1071.