People of State of Illinois ex rel. Lyman F. Martin et al., Appellees, v. Ralph E. White and Joseph F. Janda, Appellants.

## Gen. Nos. 43,493, 43,515.

[Gen. No. 43,493]

[Gen. No. 43,515]

Opinion filed May 29, 1946. Rehearing denied June 12, 1946. Released for publication June 13, 1946.

JOSEPH I. BULGER, of Chicago, for appellants; ODE L. RANKIN and JOSEPH I. BULGER, both of Chicago, of counsel.

FRANK J. LEXA, for appellees.

### [Gen. No. 43,493]

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

By an order here entered on July 30, 1945 this cause was consolidated with cause No. 43515, and the parties were allowed to file one set of abstracts and briefs. This is an appeal from a judgment in mandamus; cause No. 43515 is an appeal from a contempt proceeding based on the mandamus judgment. The appeal in the mandamus case is by both defendants from a judgment ordering them "and each of them (so far as either of them may act or purport to act as said Village Clerk)" to place the Regular People's Party ticket on the ballot for the village election in Lyons, Illinois held on April 17, 1945. The appeal in the contempt case is by Ralph E. White from an order adjudicating him as village clerk to be in contempt of court for failing to obey the order to place the designated ticket

on the ballot for said election. Because the ticket was not placed on the ballot by either defendant, a rule to show cause was entered on both of them. Each separately moved to discharge the rule, and their motions being denied, they separately answered the rule. The court, pursuant to a hearing on the rule to show cause, discharged the rule as to Joseph F. Janda and adjudicated the defendant Ralph E. White to be in contempt of court for failure, as village clerk, to comply with the mandamus judgment, and fixed his punishment at six months' imprisonment in the county jail of Cook county.

The facts, so far as they are essential to a consideration of the issues involved, disclose that the Regular People's Political Party and the Progressive Citizens Ticket Political Party in the Village of Lyons, Illinois, by caucus, nominated separate candidates for certain village offices to be filled at an election scheduled for April 17, 1945. Certificates of nominations of the candidates on both tickets were duly filed in the office of the village clerk. The relators herein were the candidates on the Regular People's Party ticket. Among the candidates on the opposing ticket were Theofil T. Bulat, who was running for re-election to the office of village president, and Joseph F. Janda, one of the respondents, who was a candidate for the office of village clerk.

Objections were filed to the candidates on the Regular People's Party ticket on the sole ground that the population of the village of Lyons exceeded 5,000, and that therefore under the controlling statute the Regular People's Party, which was an established political party, could not nominate by caucus. Section 10–1 of the Illinois Election Code (Ill. Rev. Stat. 1945, ch. 46 [Jones Ill. Stats. Ann. 43.799]) provides that an established political party may nominate candidates for village offices by caucus where the population is less than 5,000. Section 1–9 of the Cities and Villages Act

(Ill. Rev. Stat. 1945, ch. 24 [Jones Ill. Stats. Ann. 21.1119]) contains the following provision: ''Whenever in this Act any provision thereof is based upon the number of inhabitants, the number of inhabitants of the municipality shall be determined by reference to the latest census taken by authority of the United States or this State, or of that municipality. It is the duty of the secretary of state, upon the publication of any State or United States census, to certify to each municipality the number of inhabitants, as shown by that census. And the several courts in this State shall take judicial notice of the population of any municipality, as the population appears from the latest Federal, State, or municipal census so taken.'' No State or municipal census of the Village of Lyons has been taken since the Federal census of 1940, which shows the population of the village to be 4,960. That is the only evidence of any official census in the record.

On March 23, 1945 the objections to the Regular People's Party candidates were presented to what purported to be a Municipal Officers Electoral Board convened pursuant to the provisions of sec. 10–9 of the Election Code [Ill. Rev. Stat. 1945, ch. 46, par. 10.9; Jones Ill. Stats. Ann. 43.807] and consisting of EDMUND K. JARECKI, county- judge, chairman, in lieu of the president of the village, who was a candidate for re-election and thereby disqualified to serve on the board, the respondent Ralph E. White, who represented himself to be the village clerk and was also acting chief of police of the village, and Louis Hoffman, a member of the board of trustees of the village of Lyons. John Daly, assistant attorney for the election commissioners, informed the board that the last Federal census showed the population of the village of Lyons to be 4,960, and expressed the opinion that the last Federal census figure governed the action of the board. At that proceeding the only other reference to a population census figure was made by respondent

White, who, without any evidentiary support, casually remarked that "according to the OPA statistics there is approximately 6,200, I believe."

Judge JARECKI, the statutory chairman of the board, thereupon voted to place the Regular People's Party candidates on the ballot, while White and Hoffman voted to keep them off. Before the board had announced its decision, the chairman at the request of counsel for the relators, agreed to suspend issuing any order until March 27, 1945 so as to give relators an opportunity to have decided in a mandamus proceeding then pending before the circuit court of Cook county the question whether Ralph E. White was the village clerk, since this would determine his right to act as a member of the board.

The relators in this proceeding were the plaintiffs in the circuit court mandamus case and Judge EDMUND K. JARECKI was the defendant in that proceeding, which came on for hearing on March 26, 1945. The circuit court there found that Ralph E. White was not the clerk of the village of Lyons and therefore had no authority to act as a member of the board, and entered its judgment as follows: "WHEREFORE, the Court doth enter the following judgment in mandamus, that is to say: The said defendant, the Honorable EDMUND K. JARECKI, purporting to act as Chairman of the said Municipal Electoral Board of the Village of Lyons, is hereby directed and ordered to enter a finding in the proceedings of the said Board, to the effect that the said Electoral Board as convened was not properly and lawfully constituted under the law, and that the said Electoral Board, therefore, should be dissolved; and the said defendant is further ORDERED AND DIRECTED, forthwith, to return all certificates of nomination, or nomination papers and other documents now in his possession as such purported Chairman of said Electoral Board, back to the proper Village authorities of the Village of Lyons, without any action whatever

thereon by the said purported Electoral Board; and the said defendant is further ordered forthwith to dissolve the said purported Electoral Board.''

On March 26, 1945, being the same day on which the foregoing judgment in mandamus was entered in the circuit court, and in compliance therewith, Judge JARECKI returned the nomination papers in his possession to the village clerk, and advised him that ''the mandamus action automatically ends the action of the Electoral Board.''

The following day White and Hoffman, accompanied by Joseph F. Bulger, attorney for the village of Lyons, called upon Judge JARECKI, who advised them that the board was dissolved; that there was no board in existence; and that no further action was to be taken by it. Following this conference, White and Hoffman, accompanied by Mr. Bulger, without notice to the relators of their place of meeting, immediately proceeded to room 233 in the County Building, and held what purported to be a meeting of the Municipal Officers Electoral Board. They decided that the vote taken at the meeting on March 23, 1945, of what purported to be the Municipal Officers Electoral Board, was legal and binding, and authorized Ralph E. White to enter such findings upon the records of the board and transmit the decision to candidates of the Regular People's Party, the village clerk and the objectors to the certificates of nomination. That meeting of March 27 was held in disregard of the circuit court order of March 26, 1945 and Judge JARECKI's direction that what purported to be an electoral board be dissolved; it was held without the presence of Judge JARECKI and without notice to the relators; and evidence introduced at the hearing before Judge JARECKI on March 23, 1945 showing the population of the village of Lyons according to the last census taken was completely ignored.

On March 28, 1945 White returned the certificate of nomination of the Regular People's Political Party to

that party with the rulings adopted by him and Hoffman on March 27, 1945 in room 233, County Building, in the absence of Judge JARECKI, and at the same time White transmitted the same ruling to all candidates on the Regular People's Party ticket.

On April 3, 1945 the Regular People's Party's candidates made a demand in writing on both respondents White and Janda that relators' names be placed on the ballot, and when White and Janda persisted in their refusal to comply with that request, relators filed the instant mandamus proceeding in the superior court on April 5, 1945. After the cause came on for hearing on April 12, 1945 before Judge JOSEPH GRABER, he entered an order the following day *nunc pro tunc* as of April 12, 1945 directing White and Janda and each of them (so far as either of them may act or purport to act as village clerk) to print the names of the Regular People's Party's candidates on the ballots to be used in the April 17 election and to destroy any ballots already printed. On April 13, 1945 the respondents filed their formal notice of appeal from the judgment order of mandamus and served notice on counsel for relators of a motion for April 16, 1945 to fix the amount and conditions of the appeal bond.

It appears that on April 13, 1945 relators made repeated attempts to serve on respondents the writ of mandamus issued by the superior court. They found that White had not been in his place of employment that entire day, nor did he appear at the office of the village clerk or at the police department. No one responded to repeated knockings at the door of White's home that afternoon and evening, and one of White's neighbors informed persons who attempted to serve the writ that he had gone away on a three-day vacation. With respect to Janda, no one answered the door of his residence on the afternoon of April 13, but on the evening of that day his niece, who was a person over 21 years of age and a member of his household, came to

the door and told the persons attempting to serve the writ that Janda had gone somewhere, that she did not know where nor did she know when he would return. Later that evening another attempt was made to serve the writ, and his niece, although she looked through the glass door, would not open it or admit the persons attempting to serve the writ. Still later, at 11:00 o'clock in the evening, in response to a third visit, his niece said that Janda had not returned and that she did not know when he would be back. When an attempt was then made to serve the writ by leaving a copy with her, she refused to open the door and ordered the person attempting to serve the writ to leave the premises. The following morning, April 14, the writ was served on Janda by leaving a copy of it with his niece.

As the result of the foregoing circumstances the names of the Regular People's Party's candidates did not appear on the ballot for the election, and the only names that appeared on that ballot were those of the candidates of the Progressive Citizens' ticket.

Since the election has taken place the mandamus case is moot except for the question whether the court had jurisdiction, the determination of that issue being essential for the disposition of the contempt proceeding. The principal ground urged for reversal is that the Municipal Officers Electoral Board is given exclusive and final jurisdiction to decide whether a ticket shall go on the ballot; that where the board has acted, neither the circuit nor the superior court has jurisdiction to order a village clerk to disregard its action; and that to do so is to invade the executive department of the government, in violation of article III of the Constitution, which forbids one department from assuming the powers of another. Since neither of these appeals was prosecuted to the Supreme Court, which has exclusive jurisdiction to determine constitutional questions, we are called upon to determine only

whether the judgment of the superior court in the mandamus suit was void for all purposes, thus making it impossible to predicate contempt proceedings on a refusal to obey the mandamus judgment.

Respondents contend that courts have no jurisdiction to review the judgment of an electoral board, and in support of that contention they rely upon *People ex rel. Murray v. Rose,* 211 Ill. 249; *People ex rel. McKinlay v. Rose,* 211 Ill. 252; *People ex rel. Williams v. Rose,* 211 Ill. 259 and *People ex rel. Perry v. Koerner,* 365 Ill. 521, purporting to construe the provisions of sections 10–9 and 10–10 of the Election Code. The pertinent part of section 10–10 contains the following provision: "The electoral board shall take up the question as to whether or not the certificate of nomination or nomination papers are in proper form, and whether or not they were filed within the time and under the conditions required by law, and whether or not they are the genuine certificate of nomination or nomination papers which they purport to be, and whether or not in the case of the certificate of nomination in question it represents accurately the decision of the caucus or convention issuing it, and in general shall decide whether or not the certificate of nomination or nomination papers on file are valid or whether the objections thereto should be sustained and the decision of a majority of the electoral board shall be final." The decisions upon which respondents rely can be readily distinguished under the facts in this proceeding. Since no decision on the objections in the instant case was made by a validly constituted electoral board, relators had the right to have their names placed upon the ballot to be furnished the voters, and this was a right that the superior court, under the holding in *People ex rel. Powell v. Hartley,* 170 Ill. 370, had jurisdiction to enforce by mandamus. In that case the Supreme Court, holding that the issuance of a writ of mandamus was proper to compel a county clerk to place upon

the ballot the names of nominees entitled to be on it, made the following pertinent observation: ''To hold otherwise would place it within the power of the officials charged with the duty of printing the ballots, to disfranchise, for all practical purposes, a great number,—perhaps a majority,—of the legal voters in their counties.'' With the exception of *People ex rel. McKinlay v. Rose,* none of the cases cited by respondents is applicable to the jurisdictional question here presented. In *Murray v. Rose* and *Williams v. Rose* decisions on objections to nominees had been made by validly constituted electoral boards, and in *Perry v. Koerner,* where a State Primary Certifying Board, consisting of the governor, secretary of state and state auditor, had already certified Perry's name for the ballot and the other candidate subsequently filed a petition for mandamus ordering the county clerks to omit his opponent's name from the ballot, the writ was denied because the petition failed to make parties defendant the members of said board and the party whose name it sought to have omitted from the ballot. In *McKinlay v. Rose* objections to certificates of nomination were presented to the county judges of the two counties comprising a senatorial district, who were unable to agree on the disposition of the objections, and one of the candidates applied to the Supreme Court for a writ of mandamus directing the secretary of state to take steps to place his name on the ballot. The petition was denied only because it failed to allege that the parties who called the convention which nominated the relator had authority to call it, but the opinion impliedly recognizes the proposition that where a board authorized to pass on objections, failed to arrive at a valid decision, the courts may determine the rights of candidates to have their names on the ballots and to enforce those rights by writ of mandamus.

■ With respect to the provisions of the statute hereinbefore quoted, it will be observed that the electoral board is vested with the power and duty to decide whether or not the certificate of nomination or nomination papers on file are valid or whether the objections thereto should be sustained, and although it provides that the decision of a majority of the electoral board shall be final, it must have been the intention of the legislature to provide that it "shall be final" only when it has been arrived at by a legally constituted board, in a legal manner, pursuant to competent evidence, without the abuse of discretion, not arbitrarily or fraudulently. If the statute were to be construed otherwise, the final decision of the electoral board, even though fraudulent, arbitrarily arrived at or based upon a clear abuse of discretion and without any evidence to support its decision, would vest those members of the board who happened to have control of the political machinery, with power to disfranchise candidates of an opposing party who might conceivably be the choice of a majority of the electorate and thus perpetuate the members of the controlling political power in office. This presents a challenge to justice. Our democratic institutions are based on free elections, and our laws and traditions recognize the rights of persons who are qualified and who comply with statutory provisions to present themselves for public office. It certainly could not have been the intention of the legislature to defeat these inviolate rights by vesting the electoral board with a final decision where it clearly appears that its ruling is arbitrary or predicated upon an abuse of power or even fraudulent.

■ In the case at bar the mandamus judgment in the circuit court specifically found that White was not the village clerk, thereby disqualifying him from membership on the electoral board, and consequently

that the board was not legally constituted to pass on the objections to relators' nomination papers. However, assuming that the decision had been made by a legally constituted board, we are still of the opinion that the superior court had jurisdiction to review by mandamus the action of a board which was so clearly an abuse of power and so arbitrary as to amount to fraud. The sole objection to the nomination of the relators was that the population of the village of Lyons exceeded 6,000 and therefore they could not be nominated by the caucus of an established political party in the village. There was no evidence to support this finding. The only evidence adduced before the board was that the Federal census showed the population of the village to be 4,960, and in the absence of any countervailing proof that a State or municipal census taken since 1940 disclosed the population to be in excess of 5,000, the electoral board was bound by that evidence and had no alternative except to allow the nomination papers of the relators to be filed. The right of courts to review by mandamus the acts of public officers where they have acted arbitrarily or in abuse of discretion is well settled by numerous decisions in this State holding that if a discretionary power is exercised with manifest injustice, the courts are not precluded from commanding its due exercise, and as stated in *Illinois State Board of Dental Examiners v. People ex rel. Cooper,* 123 Ill. 227, "they will interfere, where it is clearly shown, that the discretion is abused. Such abuse of discretion will be controlled by *mandamus.*" Because of the striking similarity between the motives of the dental examiners in that case and the apparent motives of two of the members of the electoral board, White and Hoffman, the following comments of the Supreme Court are in point: "If these averments are true, the members of the State board are abusing their discretion and making an unjust use of it. They have a right to decide whether

the college, at which an applicant for license has graduated, is reputable or not. But they must decide that question upon just and fair principles. . . . . If four of the five members, which compose the board, are instructors in a particular college, and if they are making use of their power under the State law to build up their own institution and crush out its rival, they are acting from motives of self-interest and not in the interests of the public. It cannot be tolerated that licenses should be withheld for any such unworthy reasons.'' The reasoning of the court in that case is applicable to the facts of this proceeding. We recently decided in two cases where State boards had refused examination admission to physicians who desired to practice medicine in the State of Illinois that if their ruling was arbitrary or an abuse of discretion, the court could control their action by mandamus, and the numerous cases cited and reviewed in those decisions amply support the conclusions there reached. *People ex rel. Schutz v. Thompson*, 325 Ill. App. 95; and *Schleifer v. Department of Registration and Education of Illinois*, 326 Ill. App. 259 (Abst.).

The plain facts of this case clearly indicate that instead of permitting the names of all candidates duly nominated to appear on the ballot so that the voters could decide who their village officers should be, the purported electoral board, which was held by the order of the circuit court and the statutory chairman of the board to be illegal, entered into an undertaking which was in the nature of a conspiracy to keep the Regular People's Political Party candidates off the ballot in order to insure the election of the candidates of the Progressive Political Party with which respondents were affiliated. This was nothing short of an infamous and disgraceful scheme to steal an election. Three able and experienced jurists, Judges GRABER, FISHER and JARECKI, all of whom had occasion to inquire impartially into the facts, would not countenance the

brazen scheme. We think it would be an extremely dangerous doctrine, indeed, to hold that in the light of the record presented, this illegal board could hold a rump session, and without any supporting reason, disqualify duly nominated candidates of the opposing party.

Arguments of respondents as to the uncertainty of the mandamus judgment are beside the point, because even if it were erroneous, that circumstance would not render it void. Nor would the fact that the mandamus writ was not served on White, excuse him from obeying it under the circumstances of this case, because he had full knowledge of the entry of the judgment, having on the day following the entry of the mandamus judgment filed his formal notice of appeal and served notice on counsel for relators of a motion to fix the amount and conditions of the appeal bond.

█ █ We therefore hold that the superior court had jurisdiction to review these proceedings by mandamus, and the judgment of that court in the mandamus proceeding is accordingly affirmed.

*Judgment affirmed.*

SCANLAN and SULLIVAN, JJ., concur.

### [Gen. No. 43,515]

This appeal was consolidated with cause No. 43493. In that case the principal question presented was whether the superior court had jurisdiction of the mandamus proceeding brought by relators. The facts and circumstances of these two proceedings are sufficiently set forth in our opinion in that case and need not be repeated here. Inasmuch as we have held that the superior court had jurisdiction of the mandamus case, the only question presented upon this appeal is whether disobedience of the mandamus judgment entered in case No. 43493 constitutes contempt.

█ The cases in this State are uniformly to the effect that it is contumacious to disobey an order which

the court has jurisdiction to enter, even if the order is clearly erroneous. In the recent case of *Cummings–Landau Laundry Machinery Co. v. Koplin*, 386 Ill. 368, the court held that "The principal is of universal force that the order or judgment of a court having jurisdiction is to be obeyed, no matter how clearly it may be erroneous. This is the rule whether the contempt be technically defined as criminal or civil. On an appeal from an order committing a defendant for contempt for the violation of an order of the court, no error in such prior order can be considered. The only question as to such prior order that can be considered is whether the court had jurisdiction to make it." In *Ash–Madden–Rae Co. v. International Ladies Garment Workers' Union*, 290 Ill. 301, the court said that "It is so universally settled law as to require no citation of authorities, that the orders and judgments of a court having jurisdiction must be obeyed until reversed or set aside in a direct proceeding for that purpose, and in a proceeding for contempt for violating an injunction it cannot be urged that granting the injunction was erroneous. Unless absolutely void it is binding on the parties and must be obeyed."

Since, in our opinion, the court had jurisdiction in the mandamus case, as heretofore stated and held in opinion No. 43493, defendant was bound to obey the judgment, and inasmuch as he failed and refused to do so, the finding and order holding him in contempt was properly entered and is accordingly affirmed.

*Order affirmed.*

SCANLAN and SULLIVAN, JJ., concur.