La Salle National Bank, as Trustee, *et al.*, Plaintiffs-Appellees, *v.* Joseph F. Fitzgerald, Commissioner of Department of Buildings of the City of Chicago, Defendant-Appellant.

(No. 55777;

First District (1st Division)—November 19, 1973.

Richard L. Curry, Corporation Counsel, of Chicago (William R. Quinlan and Richard F. Friedman, Assistant Corporation Counsel, of counsel), for appellant.

Thomas J. Burke, Jr., of Chicago, for appellees.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

In this rather unusual proceeding, the Commissioner of the Department of Buildings of the city of Chicago (Commissioner) has appealed to this court from an order holding him in contempt for his allegedly wilful refusal to comply with a writ of mandamus served upon him requiring him to issue a building permit. The litigation was originally filed by La Salle National Bank, as Trustee under Trust No. 37223, the Edgewater Company, an Illinois limited partnership and Kenroy, Inc., a corporation, (plaintiffs). Two issues are raised which require separate factual statements and determinations:

1. After plaintiffs had received approval of a Planned Development and made application to the Commissioner for a building permit, what was the legal effect upon the rights of the parties of a subsequent condemnation of a portion of the property by the State of Illinois for public use?

2. Whether the result reached in prior litigation was *res judicata* or created an estoppel by verdict which governed the rights of the parties here.

The property involved consists of a tract of approximately 90 acres owned by plaintiffs located on the north side of the city of Chicago. On March 14, 1969, the City Council of Chicago rezoned the property, previ-

ously classified under R-4 zoning permitting general residence use, as a Planned Development. The entire area was divided into seven portions of varying size devoted to land use as follows:

A. Townhouses and elevator apartments including related uses;
B. Townhouses and elevator apartments including related uses;
C. Townhouses and elevator apartments including related uses;
D. Business and shopping center;
E. Business offices and convenience shopping;
F. Public uses such as park and elementary school;
G. Private recreation including club buildings and facilities.

In addition, the site was arranged for necessary stores and private open spaces. The total area was indicated as 899 acres. The Plan provided for 3870 dwelling units which would average about 43 units per acre. There was also provision for parking and off-street loading.

This Planned Development was approved by all necessary agencies of the city of Chicago but the application for a building permit made by plaintiffs was not approved by the Commissioner. Accordingly, plaintiffs filed a petition for mandamus in the circuit court. On December 8, 1969, the court directed issuance of a writ requiring the Commissioner to process the application and then to issue permits. Other delays intervened and no permit was issued. Plaintiffs were told that the permit was withheld because the State of Illinois contemplated acquisition of the site by eminent domain. On December 29, 1969, plaintiffs filed a petition for a rule upon the Commissioner to show cause why he should not be held in contempt of court. A notice of appeal to this court from the judgment of December 8, 1969 was filed by the Commissioner and the cause was docketed under Gen. No. 54703.

On February 10, 1970, a petition to condemn the entire property was filed by the State. On June 18, 1970, a judgment order was entered in these proceedings which provided for condemnation of only a portion of the property. The area taken by the State of Illinois for public use as a park contains approximately 55 acres, so that some 35 acres remained. The portion taken includes areas B, D, F and G above described. These portions of the property were to be used for townhouses and elevator apartments, business uses and shopping center, the park and elementary school and the recreational and club buildings. The remaining portion of approximately 35 acres covered generally areas A, C and E. Areas A and C both provided for townhouses and elevator apartment buildings and area E provided for business and office use including convenience shopping. The total area of portions A and C would be about 26.5 acres and area E comprises about 7.1 acres. Thereafter, plaintiffs, who were appellees in the case then pending before this court (Gen.

No. 54703), moved to dismiss the appeal. On September 9, 1970, this court dismissed the appeal. Upon the filing of the mandate in the circuit court, plaintiffs served written notice thereof upon the Commissioner and requested delivery of a building permit in accordance with the previously filed application. Issuance of the permit still being withheld, on December 8, 1970, plaintiffs filed a petition for rule to show cause why the Commissioner should not be held in contempt.

The Commissioner filed a written answer to the petition admitting generally the formal allegations thereof. The answer also set forth the filing and termination of the suit for condemnation and alleged that these facts rendered construction by plaintiffs of the Planned Development as authorized physically impossible. The answer alleged that the change in the factual situation required review of any proposed construction on the portion of the property remaining to plaintiffs, so that it would be necessary for plaintiffs to make application for a new Planned Development pertaining to the remaining portion of the property still owned by them. The answer also set forth the pendency of additional litigation which will be considered in the second portion of this opinion. After hearing, the trial court held that sufficient cause was not shown by the Commissioner for his refusal to issue the permit so that he was guilty of contempt of court. The court accordingly ordered that the Commissioner be taken into custody and committed pending issuance of the requested permit. Enforcement of the order has been stayed pending disposition of this appeal.

*I.*

The parties have agreed that the Commissioner of City Planning was duly and legally authorized to promulgate, and that he did actually issue, a series of "Rules, Regulations and Procedures in Relation to Planned Development Amendments to the Chicago Zoning Ordinance." The first issue presented to us revolves about proper legal construction of these rules and regulations. The pertinent language thereof provides:

> "If at any time the applicant contemplates the withdrawal of any or all of the land and proposed structures or uses from the Planned Development, * * *. The land and structures withdrawn must comply with the regulations of the Zoning Ordinance as applicable prior to the designation of the Planned Development, shall be zoned in accord with the previous zoning classification of the area, and shall be unrelated to any Planned Development thereafter. A new application shall be submitted for the area remaining and all land and proposed structures shall comply with all the conditions and limitations for a Planned Development.

In the event a revision is made in the street pattern, affecting the intensity of use of the project area or net site area, the applicant will be required to conform to all applicable regulations of the Planned Development as approved by the City Council.

\* \* \*

However, if the boundaries of the Planned Development are revised or major land use changes are proposed, the applicant must apply to the City Council for an amendment to the Planned Development."

The Commissioner urges strongly that these regulations must necessarily be construed as requiring an amended application for a new Planned Development under the circumstances presented by this record. He contends that it would be impossible for plaintiffs to complete the Planned Development as originally approved. He points out that the basic theory of the Planned Development is to maintain average density not by a uniform development of the entire tract but by more intensive construction in certain areas and the preservation of sufficient open spaces to obtain reasonable intensity of use. In other words, the Commissioner urges that a Planned Development is in essence an inflexible unit which must be completed precisely as authorized or abandoned. The Commissioner's theory is that the Planned Development as originally permitted would result in a density of 43 dwelling units per acre. But, since plaintiffs now would build 2462 units in the remaining area of 33.6 acres, the density would calculate to 73.2 dwelling units per acre.

On the contrary, plaintiffs urge that the Commissioner's theory of inflexibility, which requires that a Planned Development be built entirely as authorized or not at all, is without legal foundation. As regards the issue of density, plaintiffs contend that the large structures contemplated and approved for portions B, D, F and G of the site will not be built because these areas will be devoted to park purposes. Consequently, plaintiffs contend that the density must be computed on the entire original 90 acres and that the 90 acres will produce seven acres of business-office uses together with an average of approximately 25 dwelling units per acre. In addition, they point out that there will be no increase in the density originally contemplated for development of areas A, C and E.

■■ Neither side cites legal authority bearing directly upon the problem. We are satisfied that none exists. In attempting to resolve this issue, we feel that plaintiffs' arguments are stronger than and preferable to the theories advanced by the Commissioner. However, we cannot rest a conclusion strictly upon this point of view. The legal problem actually before us is a determination of the intention of the agency of the city

of Chicago which promulgated these applicable regulations as expressed in the regulations themselves. Analogously, if we were dealing with a construction of a statute, we would attempt to ascertain "* * * the true intent and meaning of the legislature." (*People ex rel. Hanrahan v. White*, 52 Ill.2d 70, 73, 285 N.E.2d 129.) In construing a written contract, our "primary object" would be to ascertain the intention of the parties from the language used. *Schek v. Chicago Transit Authority*, 42 Ill.2d 362, 364, 247 N.E.2d 886.

The same basic procedure should be followed here. Upon studying these regulations, it is manifest that they contain no provision whatsoever for a situation such as presented in the case before us involving a condemnation or involuntary taking of a portion of a site by higher authority. At one point, the language quoted above refers to withdrawal by the applicant of a portion of the Planned Development and requires a new application in such a situation. The following language is concerned with revision being made in the street pattern affecting the intensity of use. The latter portion of the language refers to proposed revision of the boundaries of the Development or of land use changes in which case the applicant must apply for an amendment. It appears to us that each and all of these situations deal solely with voluntary changes or revisions proposed and initiated by the owner of the property. It seems evident that none of this language has application to a situation involving an involuntary change in the subject of the Planned Development caused by exercise of eminent domain.

■■ In such a situation, this court had no power to make additions or amendment to the regulations before us upon a subject matter which is not included within their scope as presented. It is true that we do have the power to arrive at a correct construction of a legislative enactment by adding words or even phrases which were the subject of patent omission, particularly where such addition is required to arrive at a sound and logical construction rather than an absurd one. (*Halberstadt v. Harris Trust & Savings Bank*, 55 Ill.2d 121.) However, it is basic and fundamental that we must abstain from attempting to create new legislative enactments. "[W]e cannot insert a provision into a statute not placed there by the General Assembly" (*French v. Toman*, 375 Ill. 389, 396, 31 N.E.2d 801) nor can we insert into a city ordinance "* * * a provision not placed there by the enacting authority * * *." *City of Chicago v. Neher*, 5 Ill.App.3d 22, 25, 282 N.E.2d 521.

Plaintiffs also contend that if these regulations be construed as urged by the Commissioner, they must then necessarily be adjudged illegally vague, indefinite and uncertain; unreasonable because not linked to the public interest and welfare and invalid as an attempted exercise by the

court of a legislative function. In view of the result above reached, these additional matters need not be considered.

■■ One caveat must be added. This opinion attempts only to decide the case before us. We do not promulgate a general rule applicable to each and every future situation in which approval of a planned development is followed by governmental taking of a portion of the site. We do not hold that a situation may not develop in which the amount of land remaining would operate to make the development impossible of completion without some adverse effect upon the public welfare. We hold merely that in the case before us, for the reasons stated, plaintiffs need not apply for amendment of the Planned Development ordinance.

We will here interject the thought that there is a serious question as to the legal right of the Commissioner, in this contempt proceeding, to raise any point regarding the merits of issuance of the writ of mandamus other than those questions which bear upon the jurisdiction of the court which issued the writ. There are a number of cases decided by the Appellate Court of Illinois which hold that, where the court which issued a writ of mandamus had jurisdiction of the subject matter and over the person of the respondent, contentions pertaining to the merits of ordering the writ cannot be raised in proceedings seeking punishment of the respondent for contempt for failure to obey the writ. (See 26 I.L.P. 188, sec. 196 under Mandamus; *People ex rel. Martin v. White*, 329 Ill.App. 81, 94, 95, 67 N.E.2d 498; and *People ex rel. Barclay v. West Chicago Park Commrs.*, 308 Ill.App. 622, 629, 32 N.E.2d 323.) In the case before us, it is true that there was a change in circumstances caused by filing of the petition for condemnation which occurred after the trial court had issued the writ of mandamus. Notwithstanding this, a strong argument could be made to the effect that the Commissioner may not raise any point other than jurisdictional questions. However, we need not decide this question because, in our opinion, the merits of the controversy have been determined by our examination of the pertinent regulations as above set forth.

## II.

After disposition of the eminent domain suit, and prior to dismissal of the first appeal by the Commissioner, on August 14, 1970, three property owners filed suit in the circuit court against the city of Chicago, the Commissioner, the city Commissioner of Development and Planning, and plaintiffs herein the Edgewater Company and Kenroy, Inc. (*Cohen v. City of Chicago*, circuit court of Cook County, Gen. No. 70 CH3418.) This suit prayed injunctional relief to prevent construction of any kind upon the site on the identical theory raised by the Commissioner in the

case before us; namely, that the condemnation of a portion of the subject property made it necessary for plaintiffs to submit a new Planned Development for the remaining tract. In due course, the city of Chicago, the Commissioner and the city Commissioner of Development and Planning joined in an answer to the complaint. They alleged that the factual change resulting from the condemnation required resubmission of a proposed Planned Development by plaintiffs to the proper authorities, precisely as urged by the Commissioner here. The Edgewater Company and Kenroy, Inc. (plaintiffs herein) filed an answer in which they took the same position upon which they depend here. They denied the necessity for a new application for amendment of the Planned Development.

These two defendants in *Cohen* (plaintiffs herein) made a motion for summary judgment setting forth and depending upon the previous order of the circuit court of Cook County in the case at bar for mandamus to compel issuance of the building permit and also advancing the remainder of the contentions now before us. They also set forth that they had expended in excess of $1,000,000 in matters directly attributable to their application for building permit including architectural and legal fees, interest on loan payments, real estate taxes and consulting and engineering fees. Plaintiffs therein filed a countermotion for summary judgment.

After full hearing, the circuit court entered a final judgment. This judgment recited that all the parties agreed that only issues of law were involved and that there was no genuine issue of material fact. The trial court in *Cohen* thereupon found and ordered, adjudged and decreed that the acquisition by the State of Illinois of a portion of the property involved did not render the ordinance creating the Planned Development void or affect its validity in any regard and that this ordinance was in full force and effect. The same trial court also found, and accordingly ordered, that Edgewater Company and Kenroy, Inc., two of the plaintiffs here, were entitled to the issuance of building permits in accordance with the ordinance in question "upon proper application therefor." Accordingly their motion for summary judgment was granted, the countermotion for summary judgment made by plaintiffs in that cause was denied and the complaint dismissed. No appeal from this final judgment was taken by any of the parties.

The related doctrines of res judicata and estoppel by verdict emanate from the basic tenet of the common law that one decision of a disputed point is sufficient and should bar further litigation between the parties. We need hardly define these principles which have been the subject of so many decided cases. For purposes of this opinion, it is sufficient to state that res judicata requires "* * * an identity of the

parties and an identity of the cause of action with the one in which the defense is interposed." *City of Elmhurst v. Kegerreis*, 392 Ill. 195, 201, 64 N.E.2d 450 quoting from *Chicago Title & Trust Co. v. National Storage Co.*, 260 Ill. 485 at 493, 103 N.E. 227. See also *McCorkle v. Mc-Corkle*, 6 Ill.App.3d 1053, 1055, 1056, 278 N.E.2d 134.

■■ Estoppel by verdict requires identity of parties but not identity of causes of action. It is applicable where there is a decision in the earlier proceeding of the same issue sought to be raised in the later one. (*Creeco Co. v. Northern Illinois Gas Co.*, 73 Ill.App.2d 218, 222, 129 N.E. 2d 257.) We need not determine whether the causes of action between the parties here are the same as those involved in the preceding *Cohen* litigation so as to permit application of res judicata because this record makes it clear that the doctrine of estoppel by verdict is necessarily applicable to the rights of the parties before us.

The important portions of the record in the previous litigation referred to as the *Cohen* case are before us. It appears from the pleadings of the parties therein that the effect of the condemnation proceedings upon the planned development was a material and controlling issue in that case. Plaintiffs there specifically alleged that the condemnation required a new planned development. Plaintiffs in this cause, in their answer filed in the former cause, specifically denied this. It further appears directly and with complete certainty that the trial court in the former case decided that the acquisition of a portion of the property by the State did not affect the validity of the planned development. In this regard, the case before us is to be contrasted with *Lange v. Coca-Cola Bottling Co.*, 44 Ill.2d 73, 254 N.E.2d 467. There, only the result in the former litigation was manifest. The basis for the result did not appear. In the case before us, the decision of the court was clear and specific and it must be deemed binding upon all of the parties in the present litigation. The doctrine of estoppel by verdict requires us to affirm the judgment appealed from.

■■ The Commissioner urges that in the former litigation he was a codefendant with plaintiffs in the case before us. This fact has been held immaterial. It is the law of Illinois that, "* * * parties need not be arrayed on opposite sides in the prior litigation nor formal issues there drawn between them by cross pleadings for collateral estoppel to apply." *Stangle v. Chicago Rock Island and Pacific R.R. Co.* (7th cir. 1961), 295 F.2d 789, 790, 791 citing *Rose v. Dolejs*, 7 Ill.App.2d 267, 275, 129 N.E.2d 281; *Lynch v. Chicago Transit Authority*, 62 Ill.App.2d 220, 222, 210 N.E.2d 792.

In *Karon v. Marhoeffer*, Appellate Court, First District, Gen. No. 57263, 14 Ill.App.3d 274, 302 N.E.2d 478, a negligence action was

brought against three defendants. One defendant made a motion for summary judgment which was sustained on the specific ground that said defendant was not guilty of negligence. Thereafter, one of the other defendants filed a third-party action against the dismissed defendant · claiming that it was guilty of active negligence and that it was liable upon an indemnity agreement. This court sustained an order dismissing the third-party complaint on the ground of estoppel by verdict. We reach the same conclusion in the case before us. The issues between these parties regarding legal effect of condemnation of a portion of the Planned Development may not be raised by the Commissioner at this time.

The conclusions thus reached regarding both of the issues before us permit no result other than affirmance of the order appealed from.

Order affirmed.

BURKE, P. J., and HALLETT, J., concur.