CHICAGO PARK DISTRICT *et al.*, Plaintiffs-Appellants, *v.* KENROY, INCORPORATED, *et al.*, Defendants-Appellees.—(THE CITY OF CHICAGO, Intervening Plaintiff-Appellant.)

First District (2nd Division)    No. 76-124

Opinion filed January 10, 1978.—Modified on denial of rehearing April 4, 1978.

Richard J. Troy, of Chicago, for appellant Chicago Park District.

Gayle F. Haglund, of Chicago, for appellant Public Building Commission of Chicago.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Richard F. Friedman, Assistant Corporation Counsel, of counsel), for appellant City of Chicago.

Friedman & Koven and Burke & Weber, both of Chicago (Paul Homer, Thomas T. Burke, and Lawrence M. Templer, of counsel), for appellees.

Mr. JUSTICE DOWNING delivered the opinion of the court:
These appeals arise from the dismissal of two amended complaints. Plaintiffs, Chicago Park District (Park District) and Public Building

Commission of Chicago, Illinois (PBC), brought an action against defendants, Kenroy, Incorporated (Kenroy), Edgewater Company, La Salle National Bank and others, seeking the imposition of a constructive trust to recover damages. By its additional, intervening action against defendants, the intervening plaintiff, City of Chicago (City), sought a constructive trust and damages. The amended complaint of the Park District and PBC was dismissed on the ground that the action constituted a collateral attack upon the final judgment order in another case; the City's amended complaint was dismissed for its failure to state a cause of action.

The Park District and PBC contend that their action does not constitute a collateral attack upon a connected, prior eminent domain judgment. The City contends that its amended complaint states a cause of action. All of the appellants contend that a public body may recoup funds which were fraudulently extracted from it, and that such a body may have a constructive trust imposed upon the funds.

The amended complaint of the Park District and PBC alleged that on or about March 14, 1972, the Park District, acting through its Board of Commissioners, passed an ordinance directing its general superintendent to take all necessary steps to acquire a parcel of property commonly known as Edgewater Golf Club. Such acquisition was to be accomplished whether through negotiation with the owners or by exercise of the right of eminent domain. On or about September 28, 1972, the Park District filed an action in the circuit court of Cook County to acquire the property through its eminent domain powers. Before and after the filing of the eminent domain suit, the Park District had the property appraised by qualified appraisers and also deposed numerous appraisers retained by defendants. The Park District did so to obtain various opinions of the fair cash market value of the property so as to determine the amount to pay the owners as just compensation.

During the pendency of the eminent domain proceeding, on November 14, 1972, the Park District's Board of Commissioners authorized the general superintendent to request that the property be acquired by the PBC for the construction of park and recreational facilities. The Park District would then lease the property from PBC for 20 years. On November 20, 1972, PBC passed Ordinances No. 993 and 993A designating the property as a site to be acquired by the PBC in accordance with the 20-year lease plan. On January 24, 1973, the Chicago City Council ratified such designation by ordinance. Pursuant to a motion of the Park District, the judge in the eminent domain case, the Honorable Edward Healy, substituted PBC as the petitioner on August 1, 1974.

The amended complaint also alleged that pursuant to the Public Building Commission Act and the Chicago Park District Act, the Park

District was obligated and will continue to be obligated to levy a tax in an amount sufficient to amortize the PBC's cost of the acquisition. Prior to the filing of the eminent domain case, on or about March 14, 1969, the Chicago City Council acted on a petition by defendants and rezoned the property from R—4 Residential Use to Planned Development No. 67. During the time period of the eminent domain case, depositions were taken of various appraisers wherein each gave opinions of value based on the rezoning classification of Planned Development No. 67. One of those giving an opinion was Roy Gottlieb, an officer of Kenroy and a general partner in the Edgewater partnership. Predicated upon the appraised valuations, an agreement was entered into on February 27, 1974, between the parties of the eminent domain case and others, whereby all concerned agreed that just compensation would be $10,300,000.

In accordance with the agreement, on August 1, 1974, Judge Healy entered an order whereby PBC was to pay LaSalle $10,300,000 as just compensation for the taking of the property. (See judgment order in Public Building Commission of Chicago v. LaSalle National Bank, *et al.*, Circuit Court of Cook County, No. 72 L 12246.) Plaintiffs alleged that throughout the period of the eminent domain case and during the negotiations that led to the valuation, all of the defendants in this appeal maintained that the property was properly rezoned from R-4 to Planned Development No. 67. Yet on October 3, 1974, in a case pending in the United States District Court for the Northern District of Illinois, Roy Gottlieb and Kenneth Tucker, officers of Kenroy and members of the Edgewater partnership, testified that the rezoning was secured by means of bribery and fraud. *United States v. Wigoda* (N.D. Ill. 1975), 74 CR 291 (unreported decision), *aff'd* (7th Cir. 1975), 521 F.2d 1221, *cert. denied* (1976), 424 U.S. 949, 47 L. Ed. 2d 355, 96 S. Ct. 1421.

The Park District and PBC further alleged that under the State and Federal constitutions they were obligated to pay just compensation; that in determining just compensation the highest and best use to which property may be used is considered; and that the zoning of a parcel is a principle controlling the highest and best use. Plaintiffs also alleged that defendants knew or should have known that the rezoning they secured substantially increased the property's valuation for eminent domain purposes. Thus, defendants knew or should have known that the value of the property had been fraudulently enhanced by defendants' illegal acts.

Plaintiffs alleged that due to defendants' illegal acts, the taxpayers of the Park District were and are required to pay an amount for the property substantially in excess of the value had the property not been rezoned. In computing the amount of unjust enrichment, plaintiffs alleged that the amount to be recovered is the difference between the value of the property zoned R-4 and the value as rezoned Planned Development No.

67; that is, $5,000,000. In addition, plaintiffs alleged that defendants now hold that excess amount as constructive trustees for plaintiffs and the taxpayers of the Park District. Plaintiffs, therefore, sought the following relief: that defendants be declared constructive trustees of that portion of the proceeds which equals the difference in valuation between the value of the property as zoned R-4 and rezoned Planned Development No. 67; that such constructive trust be imposed for the benefit of plaintiffs and the taxpayers of the Park District; that upon just terms, the funds be ordered returned to the treasury of the Park District; that until the time such funds are returned the court impose an equitable lien on defendants' properties in an amount equal to the funds held by them as constructive trustees; and any other relief deemed appropriate.

In another count, plaintiffs alleged that the defendants at all times intended and acted to deliberately defraud plaintiffs. Thus, plaintiffs also sought the sum of $10,000,000 as punitive damages, plus costs. Finally, plaintiffs alleged that defendants knew that the property was improperly rezoned; that defendants purposely concealed by their words and actions the improper rezoning of Planned Development No. 67; that defendants intended to induce and did induce the appraisers to rely upon defendants' representations of the propriety of Planned Development No. 67 in making their respective opinions of the property's highest and best use; that defendants intended to induce and did induce plaintiffs to rely upon defendants' representations in order to secure an agreement that just compensation was $10,300,000; and that as a result of defendants' tortious misrepresentation of fact, plaintiffs suffered damages in an amount equal to the difference between the valuation before and after rezoning or $5,000,000. Plaintiffs then prayed for $5,000,000 as actual damages and $10,000,000 as punitive damages.

The City, in its amended complaint, alleged that in 1967, 1968, and 1969, defendants appeared before the Chicago Plan Commission to seek approval of the rezoning; in 1968 and 1969, defendants appeared before the Chicago City Council's Committee on Building and Zoning to seek approval of the rezoning; and in 1967, 1968, and 1969, defendants made application to the City of Chicago's Department of Development and Planning to have the property rezoned. Moreover, the City alleged that defendants made representations to each of those bodies and in reliance thereon each of the bodies recommended enactment of the zoning change. The City, therefore, claimed that defendants failed to disclose their illegal activities and fraud in seeking approval from the aforementioned agencies and departments.

The City alleged that subsequent to the rezoning of the property in question, Gottlieb and Tucker transferred an envelope containing $50,000 in cash to Paul Wigoda. Wigoda was at that time a City alderman and a

member of the Chicago Plan Commission, the City Council, and the Council's Committee on Building and Zoning. As a member of each of those bodies, Wigoda voted to approve defendants' application for a zoning change. As stated in *United States v. Wigoda* (7th Cir. 1975), 521 F.2d 1221, 1225, "* * * the jury could properly find that the defendant [Wigoda] received a $50,000 cash payment in return for his assistance with respect to the Edgewater property and that he did not report this sum on his 1969 income tax return." The City further claimed that defendants' activities injured and adversely affected the economy of the City in that (a) excessive tax revenues are required from the citizens of Chicago to pay the exaggerated price of the property; (b) Chicago citizens were defrauded of the honest and loyal services of an alderman; and (c) the agencies and bodies of the City were deprived of the full knowledge of defendants' interest and representation with regard to the property. As relief, the City sought the imposition of a constructive trust, a return of the excess amount to the treasury of the Park District, the reduction of each taxpayer's aliquot share of taxes, attorneys' fees, and costs.

In another count the City brought its suit as a class action on behalf of the class of all citizens and taxpayers of Chicago. The City therein alleged that defendants' nondisclosure of their activities was fraudulent in that the various agencies and bodies would not have acted as they did had they known of defendants' activities. The basis for the claim of alleged fraud upon Chicago citizens was that they must ultimately pay the inflated price of the rezoned property.

The final count of the City's amended complaint alleged that in 1969 defendants, or some of them, instituted an action in the circuit court, seeking to have the City's building commissioner issue a building permit pursuant to the Planned Unit Development ordinance. Defendants prevailed in that suit and in the appellate court. (*La Salle National Bank v. Fitzgerald*, No. 69 L 16155, *aff'd* (1st Dist. 1973), 15 Ill. App. 3d 1016, 305 N.E.2d 355.) When the commissioner duly prosecuted his appeal to the Illinois Supreme Court, defendants obtained an agreement with plaintiff to dismiss the commissioner's appeal and permit the entry of an adverse judgment. (See order in *La Salle National Bank v. Fitzgerald* (1974), 56 Ill. 2d 587.) The City alleged that the stipulation was conditioned upon defendants having obtained the purchase of the property upon the excessive value earlier described. In addition, the City claimed that the filing, continuation, proceedings, and the stipulation to dismiss was an abuse of process and a part of and continuance of defendants' fraud. As the City had to expend large sums in attorneys' fees, court costs, printing fees, and other expenses, the City also prayed for actual damages of $60,000, punitive damages of $500,000, attorneys' fees, and court costs in the instant action.

Defendants moved to dismiss both amended complaints on the grounds that (a) the complaints were barred by the prior final judgment entered on August 1, 1974, by Judge Healy in the eminent domain case; and (b) the complaints were substantially insufficient in law and failed to state a claim upon which relief could be granted. The court dismissed the amended complaint of the Park District and PBC on the ground that the present action constituted a collateral attack upon Judge Healy's order in the eminent domain case. The City's amended complaint was dismissed for failure to state a cause of action. These appeals then ensued.

## I.

■■■ Although the City contends that it has stated a cause of action, we find it unnecessary to reach that contention because the cause of action, if any, is barred by the applicable statute of limitations. In pertinent part, section 15 of the Limitations Act states that, "\* \* \* all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued." (Ill. Rev. Stat. 1975, ch. 83, par. 16.) Our supreme court held in *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 69, 250 N.E.2d 656, that the all-inclusive phrase "all civil actions not otherwise provided for" encompasses actions not only for fraud and deceit, but also actions for tortious misrepresentations. (Accord, *Thompson v. Howard* (3d Dist. 1975), 32 Ill. App. 3d 991, 996, 337 N.E.2d 94.) Therefore, if the City's cause of action is construed as one for fraud and deceit or tortious misrepresentation, the limitation period is 5 years.

■■ The City alleged in its amended complaint that defendants failed to disclose the bribe to Wigoda when they appeared before various City bodies in 1967, 1968, and 1969. Notwithstanding the fact that the City Council passed the rezoning ordinance in March of 1969, the City's initial complaint herein was not filed until April of 1975; that is, more than 6 years after the activities which form the basis of the City's complaint. Thus, it appears from the face of the complaint that it was filed beyond the limitation period.

■■ We note, too, that the statute of limitations was not tolled pursuant to section 22 of the Limitations Act (Ill. Rev. Stat. 1975, ch. 83, par. 23). That section provides:

"If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within five years after the person entitled to bring the same discovers that he has such cause of action, and not afterwards." (Ill. Rev. Stat. 1975, ch. 83, par. 23.)

The concealment of a cause of action which will prevent the operation of the statute of limitations must consist of affirmative acts or representations

designed to prevent, and which do prevent, the discovery of the cause of action. (*Skrodzki v. Sherman State Bank* (1932), 348 Ill. 403, 407, 181 N.E. 325; *Lancaster v. Springer* (1909), 239 Ill. 472, 482, 88 N.E. 272; *Wilson v. LeFevour* (1st Dist. 1974), 22 Ill. App. 3d 608, 609, 317 N.E.2d 772.) Mere silence of the defendant and mere failure on the part of the plaintiff to learn of a cause of action do not amount to such fraudulent concealment. (*Jackson v. Anderson* (1934), 355 Ill. 550, 557, 189 N.E. 924; *Northern Trust Co. v. Essaness Theatres Corp.* (N.D. Ill. 1952), 103 F. Supp. 954, 967.) In the instant case the City's claims of fraudulent concealment are premised not on defendants' affirmative acts or representations, but on their silence. The gist of the City's amended complaint in this regard is that defendants failed to disclose the intended bribe to Wigoda when they appeared before the various City bodies. Illinois law is clear, however, that under these circumstances the concealment provision is inapplicable and defendants are not estopped from asserting the statute of limitations as a defense.

■■ ■ Even if the City's cause of action is construed as one for enforcement of a constructive trust, defendants are not estopped from asserting the statute of limitations. Constructive trusts are also subject to the operation of the statute of limitations. (*Schreiner v. City of Chicago* (1950), 406 Ill. 75, 91-92, 92 N.E.2d 133; *Lurie v. Dombroski* (2d Dist. 1957), 13 Ill. App. 2d 152, 158, 141 N.E.2d 331.) The only exception to such rule is not here applicable. (*E.g., Anderson v. Lybeck* (1958), 15 Ill. 2d 227, 235, 154 N.E.2d 259; *Neurauter v. Reiner* (1st Dist. 1969), 117 Ill. App. 2d 141, 148, 254 N.E.2d 66; *Higgins v. Higgins* (1st Dist. 1966), 72 Ill. App. 2d 179, 191, 219 N.E.2d 88.) Whether the City's claim was based upon a theory of fraud and deceit, tortious misrepresentation, or enforcement of a constructive trust, the statute of limitations remained five years.

As the Illinois Supreme Court stated in *Rozny,* the more difficult question is as to when "the cause of action accrued," thereby triggering the statute of limitations. (43 Ill. 2d 54, 69.) The so-called "discovery rule" is now the accepted rule in Illinois (*Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1975), 61 Ill. 2d 129, 334 N.E.2d 160; *Berry v. G. D. Searle & Co.* (1974), 56 Ill. 2d 548, 309 N.E.2d 550; *Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32, 262 N.E.2d 450; *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 261 N.E.2d 305; *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656), but its application in specific situations must be carefully scrutinized (*Praznik v. Sport Aero, Inc.* (1st Dist. 1976), 42 Ill. App. 3d 330, 336, 355 N.E.2d 686). In the instant case the City wholly failed to plead why the facts underlying its cause of action were not discovered or could not have been discovered until April of 1975 when the City filed its first complaint.

Although we might assume that the City did not know of the bribe given to assure rezoning until such testimony was adduced at Wigoda's trial, the City never set forth the allegation in its complaint.

■■ We think the City was under a duty to specifically plead the facts necessary to explain why the "discovery" of its cause of action did not occur sooner. The recent case of *Auster v. Keck* (1976), 63 Ill. 2d 485, 349 N.E.2d 20, suggests this requirement. In *Auster,* the court examined count II of a complaint filed in 1972 by plaintiffs-homeowners against defendants-architects for the collapse of a ceiling. The count in question alleged defective design of the house in 1960, defendants' creation of the design, and defendants' approval of construction pursuant to the design. It also alleged plaintiffs' lack of knowledge of the latent defects, and sought $50,000 in damages. Although count I of the complaint against the prior owners had alleged knowledge of the latent defect on the part of the prior owners and their malicious failure to so inform the plaintiffs, count II was silent with respect to any knowledge that the prior owners may have had as to the defective condition. As the house was constructed in 1960 and the plaintiffs purchased it in 1969, there was a 9-year period following construction with respect to which the record was silent concerning knowledge of the defect. The court in *Auster,* therefore, concluded that the action against the architects was barred by the statute of limitations:

> "In our opinion the burden of alleging that the defective condition remained undiscovered from the time that construction was completed until the date that it became known to the plaintiffs rested upon them. Count II of the complaint, however, is entirely consistent with the existence of full knowledge of the defective condition on the part of the former owners during the entire period of their ownership.
>
> This case, therefore, does not call for a decision as to the applicability of the 'discovery rule' to malpractice actions against architects, and we do not reach that question." 63 Ill. 2d 485, 488.

Similarly, in the case at bar, the City had the burden of alleging that it neither knew, nor could have known, of the facts supporting its cause of action until some time after the basis for the action was completed. Absent such specific pleading, the "discovery rule" is inapplicable. Thus, the City's cause of action, if any, is barred by the statute of limitations (Ill. Rev. Stat. 1975, ch. 83, par. 16).

■■■ In its petition for rehearing the City argues that it was not subject to the statute of limitations. The City failed to raise this issue in its original brief and failed to file a reply brief. We note, however, that points not raised in the original brief are waived and may not be raised, for the first time, on petition for rehearing. (Ill. Rev. Stat. 1977, ch. 110A, pars.

341(e)(7), 367(b); *People v. Mallett* (1970), 45 Ill. 2d 388, 397-98, 259 N.E.2d 241; *Sobina v. Busby* (1st Dist. 1965), 62 Ill. App. 2d 1, 25-26, 210 N.E.2d 769.) Moreover, the City's argument is without merit. Municipal corporations, in all matters involving mere private rights, as contradistinguished from public rights, are subject to limitation laws to the same extent as private individuals. (*County of Piatt v. Goodell* (1880), 97 Ill. 84, 92; see *In re Estate of Bird* (1951), 410 Ill. 390, 394, 102 N.E.2d 329; *Winakor v. Annunzio* (1951), 409 Ill. 236, 249, 99 N.E.2d 191; *Clare v. Bell* (1941), 378 Ill. 128, 130-31, 37 N.E.2d 812; *Savoie v. Town of Bourbonnais* (2d Dist. 1950), 339 Ill. App. 551, 558, 90 N.E.2d 645; *People ex rel. Town of New Trier v. Hale* (1st Dist. 1943), 320 Ill. App. 645, 650, 52 N.E.2d 308; *Trustees of Schools v. City of Chicago* (1st Dist. 1941), 308 Ill. App. 391, 400, 32 N.E.2d 180.) As used in the present context, "public rights" are those rights belonging to all of the people of the State alike; "private rights" are those rights limited to some local subdivision or municipality, such as a city or village. *Brown v. Trustees of Schools* (1906), 224 Ill. 184, 187-188, 79 N.E. 579; *City of Chicago v. Chicago & Northwestern Ry. Co.* (1st Dist. 1911), 163 Ill. App. 251, 254-55.

■■ The City's petition for rehearing asserts that its complaint was "brought on behalf of all of the citizens and taxpayers of the City of Chicago." In addition, the petition asserts that "the fraud committed was against the public, in that citizens of Chicago were defrauded of the honest services of an alderman, the consequences of which was [*sic*] that City of Chicago taxpayers were required to pay higher taxes." The very nature of the City's claims makes clear that its cause of action involves "private rights." Thus, the statute of limitations here in question applies to the City and bars its action.

Although the defendants raised a number of other objections to the City's position, in view of our disposition of this matter, it is unnecessary to discuss those points.

## II.

The sole issue presented for our review by the appeal of the Park District and PBC is whether their action for the imposition of a constructive trust on the proceeds received in the eminent domain case constitutes a collateral attack on the earlier judgment awarding compensation. Plaintiffs contend that they seek neither to set aside the condemnation order, nor to challenge the 1969 rezoning ordinance. Instead, they maintain that their suit is a separate and new cause of action seeking restitution, via an unjust enrichment theory, of money unfairly and fraudulently acquired by defendants.

■■ A collateral attack on a judgment is an attempt to impeach that judgment in an action other than that in which it was rendered.

(*Buford v. Chief, Park District Police* (1960), 18 Ill. 2d 265, 271, 164 N.E.2d 57.) A judgment rendered by a court having jurisdiction of the parties and the subject matter, unless reversed or annulled in some proper proceeding, is not open to contradiction or impeachment in any collateral action or proceeding, except for fraud in its procurement, and even if the judgment is voidable and is so illegal or defective that it would be set aside or annulled on a proper direct application, it is not subject to collateral impeachment so long as it stands unreversed and in force. (*Baker v. Brown* (1939), 372 Ill. 336, 340, 23 N.E.2d 710; see also *Walton v. Albers* (1942), 380 Ill. 423, 427, 44 N.E.2d 145; *Barrett v. Chicago Terminal Transfer R.R. Co.* (1916), 271 Ill. 642, 643, 111 N.E. 563; *Johnson v. Hawkins* (4th Dist. 1972), 4 Ill. App. 3d 29, 31, 280 N.E.2d 291.) With these rules in mind, defendants argue that plaintiffs have attempted an improper collateral attack in that plaintiffs have not charged fraud in the procurement of jurisdiction in the eminent domain case which PBC instituted. Defendants claim that the relief plaintiffs seek could only be granted by impeaching Judge Healy's order because plaintiffs have requested a determination that defendants are not entitled to retain a material portion of the benefits awarded in the condemnation case. We do not think that plaintiffs' action herein constitutes a collateral attack.

Plaintiffs have not sought by their present action to impeach the judgment in the condemnation case (*City of Des Plaines v. Boeckenhauer* (1943), 383 Ill. 475, 480, 50 N.E.2d 483; *Pullman Bank & Trust Co. v. Trustees of Schools* (1st Dist. 1975), 26 Ill. App. 3d 604, 608, 325 N.E.2d 373, *aff'd* (1975), 61 Ill. 2d 524, 337 N.E.2d 19, *cert. denied* (1976), 425 U.S. 936, 48 L. Ed. 2d 177, 96 S. Ct. 1668), nor to vacate the judgment (*Large v. Lyons* (2d Dist. 1975), 31 Ill. App. 3d 1076, 1082, 335 N.E.2d 524), or to characterize the judgment as a nullity (*Knaus v. Chicago Title & Trust Co.* (1937), 365 Ill. 588, 592-93, 7 N.E.2d 298). They do not claim that the judgment in the condemnation case was erroneous. (*Moore v. Town of Browning* (1940), 373 Ill. 583, 586, 27 N.E.2d 533; *Strojny v. Egeland* (1st Dist. 1971), 132 Ill. App. 2d 779, 781, 270 N.E.2d 231; *City of Chicago v. Provus* (1st Dist. 1969), 115 Ill. App. 2d 176, 185-86, 253 N.E.2d 182.) Thus, plaintiffs are not questioning the sufficiency of the prior judgment (*People ex rel. Baird & Warner, Inc. v. Lindheimer* (1939), 370 Ill. 424, 428, 19 N.E.2d 336) or attempting to avoid the binding force of that judgment by questioning its validity (*Cigler v. Keinath* (1st Dist. 1912), 167 Ill. App. 65, 70).

Instead, plaintiffs ask that equity do justice in this case without requiring a law judge to reopen the eminent domain case. We emphasize that plaintiffs are not challenging the rezoning ordinance; and that ordinarily attacks on the validity of zoning ordinances cannot be heard in condemnation cases (*Department of Public Works & Buildings v.*

*Exchange National Bank* (2d Dist. 1975), 31 Ill. App. 3d 88, 98, 334 N.E.2d 810; Annot., 9 A.L.R. 3d 291, §5[a] (1966)). The whole purpose of the condemnation proceeding is to satisfy the constitutional and statutory requirements that property not be taken without due process of law and that just compensation be awarded therefor. (*Illinois Cities Water Co. v. City of Mt. Vernon* (1957), 11 Ill. 2d 547, 551, 144 N.E.2d 729; see also *Commissioners of Lincoln Park v. Schmidt* (1944), 386 Ill. 550, 555, 54 N.E.2d 525; *Wehrum v. Village of Lincolnwood* (1st Dist. 1968), 91 Ill. App. 2d 418, 420, 235 N.E.2d 343.) Had plaintiffs in the trial court sought to upset the ordinance or challenge the rezoning, we would agree that plaintiffs were collaterally attacking Judge Healy's order. However, that is not the case.

In essence, plaintiffs' amended complaint is based on fraud and unjust enrichment, issues which are clearly improper in an eminent domain proceeding. Although defendants have carefully avoided the term "bribe" when discussing Wigoda's acceptance of money, we take notice of Wigoda's conduct in this connection, as discussed in *United States v. Wigoda* (7th Cir. 1975), 521 F.2d 1221. Yet plaintiffs seek a return not of the bribe, but of the financial benefits which flowed to the briber. Plaintiffs maintain that they are entitled to the return of the amount by which it is alleged defendants were unjustly enriched: the difference between the value of the property before rezoning and the value which the parties received. Although defendants apparently believe that plaintiffs are, therefore, questioning the correctness of the amount of the condemnation award, plaintiffs claim that they are simply using the amount of the award as part of the measure of damages. We are not persuaded that plaintiffs' present action constitutes a collateral attack merely because plaintiffs have requested a unique measure of damages.

## III.

■■ We think it pertinent to comment that plaintiffs have urged us to acknowledge that the imposition of a constructive trust is a proper remedy in this case. In support of this contention, plaintiffs have drawn our attention to several cases. (*E.g., City of Chicago ex rel. Cohen v. Keane* (1976), 64 Ill. 2d 559, 357 N.E.2d 452; *County of Cook v. Barrett* (1st Dist. 1976), 36 Ill. App. 3d 623, 344 N.E.2d 540; *Fuchs v. Bidwill* (4th Dist. 1975), 31 Ill. App. 3d 567, 334 N.E.2d 117, *rev'd* (1976), 65 Ill. 2d 503, 359 N.E.2d 158; *Central Illinois Public Service Co. v. Schell* (3d Dist. 1925), 238 Ill. App. 560; *Continental Management, Inc. v. United States* (Ct. Cl. 1975), 527 F.2d 613.) Yet we have reached the only necessary question: whether the court below properly dismissed plaintiffs' cause of action because it constituted a collateral attack on the prior eminent domain judgment. Having determined that the court below improperly

892

dismissed plaintiffs' cause of action, we think it premature to comment on the merits of their case and decline to do so.

In summary, therefore, that part of the judgment of the circuit court of Cook County dismissing the City's amended complaint is affirmed; the part of the same judgment dismissing plaintiffs' amended complaint is reversed and remanded for such further proceedings as necessary not inconsistent with the views expressed herein.

Affirmed in part; reversed and remanded in part.

STAMOS, P. J., and BROWN, J.,* concur.

---

* Justice Lawrence X. Pusateri participated in the original opinion of this court. Due to his subsequent resignation, Justice L. Sheldon Brown was assigned and has considered the petitions for rehearing and this modified opinion.